■ FRANK FERRARA et al., Respondents, v SOUTH SHORE ORTHOPEDIC ASSOCIATES, P. C., et al., Defendants, and CONSTANTINE FOUSTANOS, Appellant.—Order of the Supreme Court, New York County (Michael J. Dontzin, J.), entered on or about June 28, 1991, which denied defendant's motion for summary judgment, unanimously reversed, on the law, and the motion granted, without costs.

It is plaintiff's theory in this wrongful death action that defendant Constantine Foustanos, M.D., in interpreting x-rays taken for the purpose of revealing the presence of an orthopedic condition, should have seen the tumor, later revealed by a CAT scan, which ultimately caused the death of plaintiff's decedent on April 22, 1985.

In January 1983, plaintiff's decedent, Paris Ferrara, was diagnosed at Memorial Hospital with "Stage III M1 adenocarcinoma of lung metastatic to anterior chest wall and right axillary lymph nodes." The tumor was detected by a CAT scan

conducted on December 18, 1982 by Gerald A. Irwin, M.D. which revealed "a mass in the superior lateral wall of the right thorax" which "has extended out into the axilla and has displaced the right clavicle and subscapularis muscle, posteriorly."

On November 2, 1982, Dr. Foustanos took x-rays of decedent's cervical spine, right clavicle and sternoclavicular joints at the request of J. William Fielding, M.D., an orthopedist. These films showed "no evidence of fracture" and only "mild subluxation of the right sternoclavicular joint." Dr. Fielding's own report dated November 4, 1982 states that decedent was "complaining of pain in the right shoulder area" and "also notes a mass in her right axilla described as a lump." Dr. Fielding found "no tender areas" and concluded, "There is no evidence of obvious objective underlying orthopedic pathology in this patient that would explain her complaints of severe pain."

The x-rays taken by defendant Foustanos were lost by Dr. Fielding and were unavailable during the course of this litigation. Plaintiff, however, relies on the affidavit of an expert which asserts that, as early as February 25, 1982, x-rays taken by another orthopedist "clearly and unequivocally show destruction of the right second rib as well as a soft tissue density representing, most probably, a pleural and extra-pleural tumor, at that time." These earlier x-rays were never seen by Dr. Foustanos, and plaintiff's expert never saw the x-rays allegedly misinterpreted by Foustanos. Nevertheless plaintiff's expert concludes that, "since the tumor and bone destruction were present in February and March, 1982, and there was no intervening diagnosis and treatment then, the tumor obviously must have been present on 11/2/82. Therefore, it is my opinion that Dr. Foustanos must have negligently misinterpreted the film of 11/2/82."

Defendant-appellant upon his motion for summary judgment does not address the question of whether or not a "misinterpretation" of the missing x-rays can be demonstrated (see, Alvarez v Prospect Hosp., 68 NY2d 320, 326), but instead asserts that plaintiff has failed to make a prima facie showing that any asserted negligence on defendant's part proximately caused or contributed to the death of plaintiff's decedent. "Taking the facts in the light most favorable to plaintiff, all that can be said against Dr. Foustanos is that he incorrectly read x-rays taken on November 2, 1982 and thereby caused, at most, a seven (7) *week* delay in an already delinquent diagnosis of an incurable Stage III lung cancer large enough to

destroy surrounding bone visible on x-ray 7 *months* earlier." The affidavit of defendant's medical expert states that "this patient's course would have been essentially the same even if Dr. Foustanos' films had disclosed the presence of the tumor and hospitalization had been arranged shortly after November 2, 1982", and that "the patient's prognosis was not affected by whatever tumor growth there might have been between November 2, 1982 and December 20, 1982 or even January 3, 1983" (the latter being the date of a radiology report utilized in arriving at the Memorial Hospital diagnosis).

Neither the affidavit of plaintiff's expert nor any other evidence in the record before this court supplies the requisite nexus between the malpractice allegedly committed by defendant Foustanos and the demise of plaintiff's decedent. Rather, plaintiff relies entirely on the recommendation of a medical malpractice mediation panel (Judiciary Law § 148-a [8]) that there is liability on defendant's part. Such a recommendation is a "conclusory assertion" and "does not establish a prima facie case of medical malpractice" *(Gross v Friedman,* 73 NY2d 721, 722-723). "General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat defendant physician's summary judgment motion" *(Alvarez v Prospect Hosp., supra,* at 325).

Even assuming that plaintiff could establish, without the x-rays taken on November 2, 1982, that they revealed the adenocarcinoma, he has failed to offer any proof in admissible form that the asserted misinterpretation adversely impacted upon decedent's course. In the absence of evidence that defendant physician's conduct was a proximate cause of the death of plaintiff's decedent, defendant is entitled to summary judgment as a matter of law. Concur—Murphy, P. J., Carro, Rosenberger, Ross and Rubin, JJ.