| **Fitzgerald v Huerta** |
|:---:|
| 2024 NY Slip Op 31523(U) |
| April 29, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 805236/2017 |
| Judge: Kathy J. King |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. KATHY J. KING**                          PART            06
                              *Justice*

------------------------------------------------------------------------------X

JAMES FITZGERALD,

                                Plaintiff,

                           - v -

CARLOS J HUERTA, THE DENTAL BOUTIQUE, CARLOS
J. HUERTA, DMD D/B/A THE DENTAL BOUTIQUE, PAUL J
FENYVES

                            Defendant.

------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 805236/2017 |
| MOTION DATE | 02/08/2023, 02/08/2023 |
| MOTION SEQ. NO. | 001 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 79, 80, 82, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 113, 117

were read on this motion to/for                     JUDGMENT – SUMMARY      .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 81, 83, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 114, 115, 116, 118

were read on this motion to/for                           DISMISS           .

Upon the foregoing documents, defendants Carlos J. Huerta, DMD, "Carlos J. Huerta, DMD d/b/a The Dental Boutique," and "The Dental Boutique," (collectively referred to as the "Huerta defendants") move for the following relief:

1) summary judgment and dismissal of the plaintiff's complaint in its entirety pursuant to CPLR 3212;

2) dismissal of the plaintiff's complaint with prejudice, pursuant to CPLR 3211(a)(5), with respect to all claims concerning treatment prior to December 20, 2014, including March 6, 2014 and December 11, 2014; or in the alternative,

3) partial summary judgment and limitation of the facts for trial of this action pursuant to CPLR 3212 (e) and (g);

**805236/2017  FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**
                                **Page 1 of 13**

1 of 13

[* 1]

4) directing the Clerk of the Court to enter judgment accordingly on behalf of the moving defendants.[1]

Defendant, Paul J. Fenyves, M.D. moves for the following relief:

1) dismissal of the plaintiff's complaint in its entirety with prejudice, and directing that summary judgment be entered in favor of the defendant, pursuant to CPLR 3212;

2) directing the Clerk of the Court to enter judgment accordingly on behalf of the defendant.

Plaintiff opposes both motions.

## **BACKGROUND**

Plaintiff's complaint asserts two causes of action sounding in medical malpractice and lack of informed consent against the Huerta defendants and Dr. Fenyves, respectively.

As to the Huerta defendants, plaintiff alleges that they failed to conform to accepted standards of dental care and properly premedicate him prior to rendering treatment in 2014 and 2015, causing him to develop endocarditis. Plaintiff claims that pre-medication was required based on his past medical and surgical history, which included severe aortic valve stenosis, and aortic valve replacement surgery in July 2013. It is further alleged that that Dr. Huerta's failure to order antibiotics or confirm that plaintiff had taken antibiotics or discuss antibiotic pretreatment with any of plaintiff's treating physicians caused him to develop endocarditis. Plaintiff also maintains that all claims concerning treatment prior to December 20, 2014, which includes the March 6, 2014 and December 11, 2014 care, should be dismissed as time barred pursuant to the statute of limitations.

As to Dr. Fenyves, an Internist and plaintiff's primary care physician, plaintiff claims that Dr. Fenyves failed to timely diagnose endocarditis, an infection of the heart's inner lining, usually

---

[1] The claims made against Dr. Huerta and Huerta Dentistry, P.C. are identical, and there are no separate claims against Huerta Dentistry, P.C.

**805236/2017  FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 2 of 13**

involving the heart valves during two office visits on June 16, 2015 and June 29, 2015. Specifically, plaintiff alleges that the blood test results on June 16, 2015 showed that he had a severe bacterial infection, and based on his medical history of heart valve replacement, he required immediate hospitalization, consultation by an Infectious Disease specialist, blood cultures, and intravenous antibiotics. Plaintiff alleges that Dr. Fenyves' failure to diagnose was a departure from good and accepted medical standards which proximately caused his injuries.

Plaintiff also claims lack of informed consent as to both the Huerta defendants and Dr. Fenyes .

## STATEMENT OF FACTS

On November 7, 2012, plaintiff presented to non-party Mark Schlesinger, DDS, for evaluation of tooth #3, whereby Dr. Schlesinger recommended extraction and implant placement. The tooth was extracted by Dr. Schlesinger on November 14, 2012, and an implant was placed at the site of the tooth on April 25, 2013. Plaintiff presented to cardiothoracic surgeon Dr. Leonard Girardi on July 3, 2013with a diagnosis of severe aortic stenosis. Dr. Girardi found that plaintiff was in need of aortic valve replacement surgery, which Dr. Girardi performed on July 16, 2013. The records show that Dr. Girardi advised plaintiff of the need for lifelong pre-procedure therapy for any invasive procedures.

On October 24, 2013 plaintiff returned to Dr. Schlessinger, whom he had not treated with since April 25, 2013. Dr. Schlessinger took an x-ray of tooth #3 and found that the implant was secure in the bone and ready to be restored. Plaintiff requested a recommendation for a general practitioner to restore the implant and Dr. Schlesinger referred him to Dr. Huerta. Plaintiff's first visit to Dr. Huerta was on March 6, 2014. A patient intake form indicated that plaintiff underwent an aortic valve replacement on July 16, 2013, and had a dental history of bleeding gums. Dr.

**805236/2017  FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

[* 3]

Huerta charted that "Pt had aortic heart valve replacement July 2013. Will premedicate in case need to remove [gum] tissue from around cover screw (mostly exposed)" and "Medical conditions: aortic valve replacement July 2013. Will need pre-med until cardiologist recommends otherwise."

During the March 6, 2014 visit, an x-ray was taken, and no dental treatment was performed. Plaintiff was told that he should take prophylaxis medication before the next visit in case Dr. Huerta needed to remove any gum tissue in the process of removing the healing abutment. At his deposition, Dr. Huerta testified that it is his custom and practice for every patient that has a valve replacement to discuss prophylaxis for endocarditis with medication and how to do so if a procedure warranted it.

On December 11, 2014, plaintiff returned to Dr. Huerta. He removed the healing abutment of the implant and placed an impression coping into the implant to create an impression of the abutment. The healing abutment was then reinserted using a driver to screw it back onto the implant. Dr. Huerta testified that prior to the procedure he would have questioned plaintiff as to whether he had pre-medicated, and that he would not have performed the procedure if plaintiff had not pre-medicated. During the care provided on December 11, 2014, Dr. Huerta did not cut the gum, use any instruments around the gum line nor did he use any sharp objects in plaintiff's mouth.

Plaintiff returned to Dr. Huerta on January 15, 2015, at which time he removed the healing cap and placed the abutment and permanent crown, which had been fabricated by the laboratory. Although Dr. Huerta did not cut or remove any gum tissue on January 15, 2015, he testified that he would have advised plaintiff to pre-medicate in case it was necessary to cut or remove gum tissue. Dr. Huerta determined that the crown needed shade changes, so the abutment was left in place on the implant and a temporary crown was inserted.

**805236/2017 FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No. 001 002**

**Page 4 of 13**

4 of 13

[* 4]

On March 3, 2015, Dr. Huerta removed the temporary crown, and "tried in" the shade-adjusted crown. He found that the crown needed further darkening, so it was removed, and the temporary crown was re-cemented. Dr. Huerta testified that there was no need for prophylactic antibiotics because he was not cutting into or manipulating the gum line.

On April 22, 2015, the permanent crown was cemented into place by Dr. Huerta. No antibiotic prophylaxis was done prior to this procedure because there was no manipulation of the gum line. The margins, contact, occlusion, and color were checked and were satisfactory. Floss was used to check the contacts between the teeth. The floss only goes through the contact point and not down to the gum line. No anesthesia was used and there was no bleeding and plaintiff indicated he was happy with the outcome.

On June 16, 2015, plaintiff presented to Dr. Fenyves, his primary care physician, with complaints of, *inter alia*, fatigue for two weeks, unintended weight loss, sore throat, body aches and intermittent headaches. Plaintiff was afebrile. Blood tests were done, which indicated that plaintiff's white blood count and neutrophils were elevated, and lymphocytes were depressed. Blood cultures were ordered by Dr. Fenyves and on June 30, 2015, plaintiff tested positive for streptococcus oralis the bacteria that causes Bacterial Endocarditis in heart valve patients after dental procedures. Based on the positive blood cultures, which were reported to Dr. Fenyves on July 1, 2015, Dr. Fenyves instructed plaintiff to go to the Emergency Room. On July 3rd, a Brain MRI and CT scan confirmed that he suffered an embolic stroke following complaints of visual changes reported the previous day. Plaintiff was hospitalized for 15 days with bacterial endocarditis of the artificial heart valve, during which time he developed bacterial emboli which traveled to his brain, causing various injuries.

## DISCUSSION

**805236/2017  FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 5 of 13**

It is well settled that a party moving for summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). Once the moving party has met this prima facie burden, the burden shifts to the non-moving party to furnish evidence in admissible form sufficient to raise a material issue of fact (*Alvarez*, 68 NY2d at 324). The moving party's "[f]ailure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers". "In a medical malpractice action, plaintiff must show, through a medical expert, both a deviation from accepted standards of medical care and that the treatment rendered by the moving defendant was a proximate cause of plaintiff's injuries (*see e.g.*, *Kaffka v New York Hosp.*, 89 NY2d 913 [1996]; *Ferrara v South Shore Orthopedic Assoc.*, 178 AD2d 364 [1st Dept 1991]). In the absence of evidence that defendant's conduct was a proximate cause of plaintiff's injury, summary judgment must be granted to defendant as a matter of law.

In support of their motion, the Huerta defendants submit the expert affirmations of Victor Badner, D.M.D ("Dr. Badner"), who is board certified in Public Health Dentistry, and William Mandell, M.D. ("Dr. Mandel"), who is a board certified Internist and Infectious Diseases physician. Both experts base their opinions on a review of the plaintiff's medical records and the parties' deposition testimony, and opine with a reasonable degree of medical certainty that the Huerta defendants complied with the standard of care in providing medical treatment to plaintiff.

Dr. Badner and Dr. Mandel concur that Dr. Huerta properly assessed plaintiff's antibiotic needs prior to proceeding with dental care and obtained a proper dental and medical history from

**805236/2017   FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 6 of 13**

[* 6]

plaintiff, including that plaintiff had undergone valve replacement surgery in July 2013. Both Drs. Badner and Mandel opine that the treatment rendered by Dr. Huerta did not place the plaintiff at higher risk for the introduction of bacteria into the bloodstream, and that day-to-day life activities such as aggressive flossing/brushing, and plaintiff's self-acknowledged history of bleeding gums, may have been the source of infection.

Significantly, Dr. Badner indicates that plaintiff had a standing prescription for Amoxicillin, which was to be taken one hour before surgery and that he had been advised following his July 2013 surgery that he would require lifelong pre-procedure antibiotic therapy for any invasive procedures or potential for significant break in skin integrity. In regards to plaintiff's December 11, 2014 and January 15, 2015 office visits, Dr. Badner notes that Dr. Huerta specifically discussed antibiotic prophylaxis for endocarditis and the need to pre-medicate before these visits. He also notes that according to Dr. Huertas' deposition testimony, he would not have proceeded with treatment on those dates if the plaintiff did not confirm that he had been pre-medicated. Dr. Badner opines that Dr. Huerta's documentation complied with the standard of care, and it was not necessary to specifically document that he had confirmed with the plaintiff that he had pre-medicated, as it was his custom and practice not to proceed with the procedure without confirming that plaintiff had done so. According to Dr. Badner, the claim that the healing cap and transfer coping were negligently tightened has no basis; instead, he opined that the restoration and crown placement was performed appropriately and within the standard of care.

Dr. Mandell also opines that: 1) there was no possibility of an increased risk of bacteria entering the bloodstream on March 3, 2015 and April 22, 2015, as the treatment only involved restoration of the crown and no manipulation of gum tissue; 2) there is no evidence, or reason to believe that any of the treatment rendered by Dr. Huerta allowed for introduction of bacteria into

**805236/2017   FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 7 of 13**

7 of 13

the bloodstream that caused plaintiff to develop endocarditis, as none of the treatment rendered involved manipulation of gum tissue or perforation of the oral mucosa; 3) it is speculative to allege that Dr. Huerta caused plaintiff's endocarditis since the incubation period is approximately one month, and plaintiff remained in his usual state of health until early June of 2015; and 4) the allegation that Dr. Huerta failed to diagnose an infection of endocarditis is without merit, as plaintiff had no such signs and/or symptoms when treating with Dr. Huerta.

Based on the affirmations of Drs. Baden and Mandell, the Huerta defendants have established that they did not depart from good and accepted standards of medical and/or dental care, and did not proximately cause plaintiff's alleged injuries.

Defendant Dr. Fenyves submits the expert affirmation of Michael S. Wein, M.D., a board certified Internist, in support of his motion for summary judgment. Dr. Wein opines to a reasonable degree of medical certainty that the care and treatment rendered to plaintiff by Dr. Fenyves was within the applicable standards of care for Internal Medicine practice, and that there is nothing that Dr. Fenyves did or did not do that proximately caused plaintiff's alleged injuries.

Dr. Wein opines that at plaintiff's June 16th office visit, Dr. Fenyves appropriately questioned plaintiff about his medical history and recent procedures after plaintiff had not presented to him for care in two years. The records and testimony also confirm that plaintiff only reported the 2013 aortic valve replacement surgery and did not inform Dr. Fenyves about his recent dental procedures.

Further, Dr. Wein opined that the work up initiated by Dr. Fenyves on June 16, 2015, appropriately sought to evaluate both viral and/or bacterial causes of plaintiff's complaints, which would include endocarditis. According to Dr. Wein, Dr. Fenyves first learned of plaintiff's history of having an artificial valve on June 16, 2015, and cannot be held accountable for plaintiff's failure

**805236/2017  FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 8 of 13**

8 of 13

to pre-medicate with antibiotics prior to an invasive surgery or failing to instruct him to do so. As a result, Dr. Wein opines that Dr. Fenyves had no responsibility to instruct plaintiff to take prophylactic antibiotics prior to undergoing dental work during a time when plaintiff did not present to him for ongoing care nor communicate with him about any intention or expectation of undergoing an invasive procedure. Dr. Wein cites the medical record to show that on multiple occasions plaintiff was instructed by other medical providers that he required prophylactic antibiotics before any invasive procedures because of his AVR surgery. Accordingly, Dr. Wein concludes that plaintiff's claim that Dr. Fenyes failed to inform him that he needed to treat with antibiotics prior to undergoing dental procedures is meritless and not supported by the record. Additionally, there was no basis for Dr. Fenyves to make any referral to rule out endocarditis on June 16, 2015 or suspect that there was any reason to suspect plaintiff was suffering from endocarditis because he was not made aware of plaintiff's recent dental treatment without prophylactic antibiotics until July 1, 2015.

Defendant Dr. Fenyves has also established entitlement to summary judgment as a matter of law through the affirmation of his expert, Dr. Wein, which demonstrates that the medical care and treatment rendered to plaintiff from June 16th through June 30th of 2015, was in accord with good and accepted medical standards, and was not the proximate cause of plaintiff's alleged injuries.

In opposition, plaintiff submits the expert affirmations of an unnamed dentist and Board Certified Internist and Cardiologist.

The General Dentistry expert opines that the Huerta defendants deviated from accepted standards of dental practice, which caused plaintiff to suffer streptococcus oralis endocarditis. Plaintiff's Cardiology expert opines, that Dr. Fenyves departed from good and accepted standards

**805236/2017   FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 9 of 13**

9 of 13

of medical care in treating plaintiff from June 16, 2015 through June 30, 2015, by failing to timely diagnose and treat plaintiff's bacterial endocarditis, which caused plaintiff to develop septic emboli to the brain, a stroke and resultant injuries.

Specifically, both experts raise issue of fact regarding whether Dr. Huerta properly assessed plaintiff's antibiotic needs prior to proceeding with treatment; whether Dr. Huerta failed to inform the patient that he must take antibiotics, and to ensure that the patient pre-medicated with antibiotics, or failed to follow his own protocol and treatment plan; whether Dr. Huerta failed to diagnose endocarditis; whether Dr. Huerta's records complied with the standard of care in recording an appropriate history and whether plaintiff was a candidate for pre-medication; and whether the restoration and crown placement, including the level of tightness of the healing cap and transfer coping or abutment to the subgingival implant was performed appropriately and not negligently tightened.

Plaintiffs' experts also raises an issue of fact as to whether Dr. Fenyves failed to consider that plaintiff was suffering from bacterial endocarditis based on his symptoms, blood test results and history of heart valve replacement; whether Dr. Fenyes failed to immediately hospitalize plaintiff on June 16, 2015; and whether Dr. Fenyes failed to document on June 16, 2015 that plaintiff had undergone any medical or dental procedures prior to the onset of symptoms.

Based on these expert affirmations, plaintiff has raised triable issues of fact rebutting the prima facie showing of summary judgment as to the Huerta defendants and Dr. Fenyves. Summary judgment is not appropriate ... [when] the parties [submit] conflicting medical expert opinions because [s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (*Cummings v Brooklyn Hosp. Ctr.*, 147 AD3d 902, 904 [2d Dept 2017], quoting *DiGeronimo v Fuchs,* 101 AD3d 933 [2d Dept 2012] [internal quotation marks omitted]; *see Elmes*

*v Yelon,* 140 AD3d 1009 [2d Dept 2016]; *Leto v Feld,* 131 AD3d 590 [2d Dept 2015]). Thus, the Court finds that the motions of the respective defendants seeking summary judgment on the issue of medical malpractice is denied.

As to plaintiff's informed consent cause of action, the Court notes that all moving defendants have made a prima facie showing for summary judgment which plaintiff has failed to oppose.

To recover damages for lack of informed consent, a plaintiff must establish that (1) the defendant physician failed to disclose the material risks, benefits, and alternatives to the contemplated medical procedure which a reasonable medical practitioner under similar circumstances would have disclosed and (2) a reasonably prudent person in the patient's position would not have undergone the procedure if he or she had been fully informed (*Rodriguez v. New York City Health & Hosps. Corp.*, 50 A.D.3d 464, 465 [1st Dept 2008]). Here, the record shows that plaintiff was properly informed of the risks of infection and antibiotic management given his history of valve replacement surgery. Additionally, Drs. Badner and Mandell opine that there is no casual connection between the dental care provided and plaintiff's endocarditis. It is well settled that without proximate cause, a claim for lack of informed consent cannot stand (Public Health Law §2805-d; *Amodio v. Wolpert*, 52 A.D.3d 1078 [3d Dept 2008]). Finally, Dr. Badner opines that plaintiff's lack of informed consent claim is without merit as restoration of an implant is not an invasive procedure requiring consent, and that in any event, plaintiff was properly informed of the risks of infection and the need to pre-medicate, given his history of valve replacement surgery. Additionally, it is undisputed that neither the Huerta defendants or Dr. Fenyves performed an procedure that involves invasion or disruption of the integrity of the body

**805236/2017 FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No. 001 002**

**Page 11 of 13**

for which informed consent is required (*see* Public Health Law § 2805-d[2]; *see generally Lewis v. Rutkovsky*, 153 A.D.3d 450, 456 [1st Dept 2017]).

Similarly, plaintiff does not oppose that branch of Dr. Fenyves' motion seeking dismissal of all claims asserted against him prior to June 16, 2015. Plaintiff's expert fails to render an opinion that Dr. Fenyves, plaintiff's primary care physician at the time, departed from accepted standards of medical care in treating the plaintiff prior to that date. As such, all claims asserted against Dr. Fenyves before June 16, 2015 are dismissed.

Finally, the Court notes that while the Huerta defendants seek dismissal of claims involving treatment prior to December 20, 2014, including treatment rendered on March 6, 2014 and December 11, 2014 pursuant to CPLR 3211 (a)(5), plaintiff's malpractice claims as to treatment on December 11, 2014 are not time barred under the continuous treatment doctrine. CPLR § 214-a provides that a medical malpractice action must be commenced within two and a half years from the last treatment where there is continuous treatment for the same condition which gave rise to the malpractice (*see Lohnas v Luzi*, 30 NY3d 752 [2018]; *McDermott v Torre*, 56 NY2d399 [1982]; *Devadas v Niksarli*, 120 AD3d 1000 [1st Dept 2014]).

Here, plaintiff has demonstrated that the continuous treatment doctrine tolls the statute of limitations because the course of treatment by Dr. Huerta ran continuously from the first (March 6, 2014) to the last visit (April 22, 2015), and plaintiff's claim is related to the original, crown placement. Other than placement of the crown, no other treatment was contemplated or performed. Since the claims against the Huerta defendants occured within two and a half years of the last date of treatment, the action was timely commenced on June 20, 2017 and is not time barred.

Contrary to plaintiff's contentions, however, the Court finds that the continuous treatment doctrine does not apply to plaintiff's claim that the Huerta defendants "allowed dogs to come into

**805236/2017  FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 12 of 13**

12 of 13

contact with plaintiff's body during the procedures, [which] increased the risk of infection." The record demonstrates that this claim arises from the presence of a small therapy dog in the treatment room during plaintiff's office visit on March 6, 2014, and does not relate back to the course of treatment for the crown replacement. Therefore, plaintiff's claim regarding the presence of the dog in the treatment room on March 6, 2014 is dismissed.

Accordingly, it is hereby

**ORDERED**, that the Huerta defendants motion is granted to the extent of dismissing plaintiff's lack of informed consent cause of action and dismissing the claims relating to the presence of a dog in the treatment room on March 6, 2014, and in all other respects the motion is denied; and it is further

**ORDERED**, that the motion of defendant Paul J. Fenyves, M.D., is granted to the extent of dismissing plaintiff's lack of informed consent cause of action and the claims relating to the care and treatment of plaintiff prior to June 16, 2015, and in all other respects the motion is denied.

This constitutes the Decision and Order of the Court.

| 4/29/2024 | | | |
| DATE | | KATHY J. KING, J.S.C. | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**805236/2017   FITZGERALD, JAMES vs. HUERTA, DMD, CARLOS J**
**Motion No.  001 002**

**Page 13 of 13**

13 of 13

[* 13]