Nardone v Sonett (2025 NY Slip Op 50771(U))

[*1]

Nardone v Sonett

2025 NY Slip Op 50771(U)

Decided on May 15, 2025

Supreme Court, New York County

McMahon, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 15, 2025
Supreme Court, New York County

John Nardone, Mary Nardone, Plaintiff,

against
Joshua Sonett, Mark Bessler, Marc Dickstein, The New York and Presbyterian Hospital/Columbia University Medical Center, The Trustees of Columbia University in the City of New York, Defendant.

Index No. 805174/2019

Judith N. McMahon, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100 were read on this motion to/for DISMISSAL.
Upon the foregoing documents, it is ordered that the motion for summary judgment by the defendants JOSHUA SONNETT, M.D., MARK BESSLER, M.D., MARC L. DICKSTEIN, M.D., THE NEW YORK AND PRESBYTERIAN HOSPITAL/COLUMBIA UNIVERSITY MEDICAL CENTER (hereinafter "NYPH") and THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, is granted, and plaintiffs' complaint is dismissed with prejudice.
This matter arises out of the care and treatment rendered to the plaintiff, John Nardone, between December 1, 2016, and January 14, 2017, at NYPH. In their Verified Bills of Particulars, plaintiffs claim, inter alia, that Dr. Sonnet (laparoscopic/thoracic) and Dr. Bessler (abdominal) improperly performed a surgical procedure known as Ivor-Lewis Esophagectomy with abdominal and thoracic lymphadenectomy, feeding jejunostomy and upper endoscopy with balloon and Botox of pylorus on December 1, 2016;[FN1]
improperly positioned plaintiff during that surgery; failed to be cognizant of the plaintiff's prior history of cervical spine fusion when pre-operatively planning the surgical positioning and approach to the esophagectomy, caused iatrogenic nerve injuries during the procedure, caused a hyperextension injury to the plaintiff's cervical spine at C6-C7 with nerve root damage during the procedure, and caused an injury to [*2]the plaintiff's right peroneal nerve during the December 1, 2016 esophagectomy, resulting in right foot drop, left radial nerve palsy and left ulnar neuropathy. Plaintiffs further allege that defendants were negligent in prematurely extubating plaintiff in the PACU during the post-operative period on December 2, 2016, and failing to obtain informed consent for the December 1, 2016, procedure.
It is undisputed that plaintiff was intubated a total of four times between December 1st and December 6th, (once prior to commencing surgery on December 1st), and that a tracheostomy was performed on December 9, 2016, to resolve respiratory distress which has long since resolved. All subsequent records confirm that plaintiff's adenocarcinoma was cured without the need for adjuvant therapy such as chemotherapy or radiation.
Defendants move for judgment dismissing the complaint on the grounds that their care and treatment complied with all acceptable medical and surgical standards, and that their acts or alleged omissions were not a proximate cause of injuries to this compromised plaintiff, who had a history of smoking, morbid obesity, heavy alcohol use, and obstructive sleep apnea. Plaintiffs oppose the motion.
In support of summary judgment, defendants submit the expert affirmations of a thoracic surgeon, Cameron Wright M.D. (see NYSCEF Doc. 57), a pulmonologist, Ian H. Newmark, M.D. (see NYSCEF Doc. No. 58), and an anesthesiologist, James Eisenkraft, M.D. (see NYSCEF Doc. No. 59), each of whom opines within a reasonable degree of medical certainty that the treatment rendered by the moving defendants was at all times in accordance with good and accepted medical practice, and that the purported injuries to plaintiff's right foot and left wrist occurred spontaneously and were not proximately related to defendants' conduct.
For his part, Dr. Wright finds that: (1) plaintiff was properly consented for the subject complicated surgery; (2) plaintiff's prior cervical spine fusion surgery was appreciated and was among the factors warranting a recommendation for an approach via belly and chest rather than belly and neck, and (3) plaintiff was properly positioned and padded, cushioned against the forces of gravity and re-prepped during each distinct portion of the December 1st operation, as evidenced by the records and the custom and practice during Ivor-Lewis esophagectomies. Dr. Wright opines that "all possible efforts were made to properly and carefully position the plaintiff, that the standard of care was met" (see NYSCEF Doc. No. 57, para. 83), and that, consistent with the medical records, defendants' performance of the procedure was "textbook," uncomplicated, and clearly "successful in accomplishing its purpose, to resect and definitively cure plaintiff's cancer" (id., para. 88). In Dr. Wright's opinion, plaintiff's claimed injuries did not occur during the December 1, 2016, procedure, since extremity weakness was not noticed until December 11, 2016, (i.e., ten days following the procedure: "[i]n my experience as a thoracic surgeon, it is unlikely that an intraoperative nerve injury [presents] nearly two weeks following a procedure" [id., para. 93]) and additionally, there was no contemporaneous intubation or extubating of plaintiff relative to the onset of weakness. According to Dr. Wright, Dr. Newmark and Dr. Eisenkraft, any expert opinion which attempts to causally relate the treatment to the claimed injuries would be "absolute speculation," as there is no established or documented event that immediately proceeded the injuries that can be claimed to causally relate to neuropathy (id., para. 106). According to the defense experts, plaintiff suffered from "critical illness" myopathy, a common condition that causes generalized muscle weakness in patients in ICU units (id., para. 104).
Pulmonologist Ian H, Newmark, M.D., is emphatic that "for patients undergoing [*3]esophagectomies for cancer resection, respiratory complications are amongst the most frequent adverse events" (see NYSCEF Doc. No. 58, para. 69; emphasis supplied). He opines within a reasonable degree of medical certainty, that "given the plaintiff's continuous monitoring, the rapid response to incidences of respiratory distress and his ultimately stable respiration at discharge, that plaintiff's airways during the post-operative period were adequately protected, and that his pulmonary care was managed effectively and pursuant to the standard of care" (id., para. 91).
Movants' expert anesthesiologist, James Eisenkraft, M.D., opines to a reasonable degree of medical certainty that: (1) "the anesthesiology team intubated and positioned the plaintiff with full knowledge of his cervical spine history; (2) allegations as to cervical hyperextension have no merit" (see NYSCEF Doc. No. 59, para. 74); (3) the padding and positioning utilized throughout the December 1, 2016, procedure was performed pursuant to the standard of care (id., para. 82), and (4) "there is no merit to any negligence alleged in the routine trial extubation" performed in the operating room (id., para. 92) or to the claim that the plaintiff's December 2, 2016, extubation was premature (id., para. 93).
In opposition to the motion, plaintiff submits the expert affirmation of his treating physical medicine and rehabilitation specialist, Dr. Elizabeth Bloze (see NYSCEF Doc. No. 94), whose opinion is silent as to the December 1, 2016, surgery, and confines itself to post-operative intubation and positioning of plaintiff after the treatment as issue.[FN2]
Dr. Bloze opines, "to a reasonable degree of medical certainty" that the "cumulative effect" of repeated hyperextensions of the neck by undergoing four intubations "over a course of just six days," directly caused a small central disc protrusion at C6-7 that led to left upper extremity neuropathy (id., para. 28). According to plaintiff's expert, the anesthesia team overseeing plaintiff's care in the ICU departed from good and acceptable medical practice by failing to anticipate that a tracheostomy would have been necessary to protect plaintiff's airway at a sooner date than December 9, 2016, "given the risks these hyperextensions would have created for a patient with such a history" (id., para. 29). As for the purported right peroneal nerve injury, Dr. Bloze opines that "the only viable explanation for the new right peroneal nerve palsy" was Mr. Nardone's positioning during the post-operative period while he was confined to 2-point wrist restraints in the ICU due to his agitation, confusion, and delirium in the days following the surgery" (id., para. 30). Here, Dr. Bloze posits that since plaintiff could only move his legs, he accidentally compressed the lateral side of his right leg against the rails of the bed, causing the peroneal nerve compression (id., para. 33).
The Court is mindful that summary judgment deprives the litigant of his or her day in court and is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues (Andre v. Pomeroy, 35 NY2d 361, 364 [1974]). To obtain summary judgment, a movant must establish its position "sufficiently to warrant the court as a matter of law in directing judgment" in its favor (Friends of Animals Inc., v. Associated Fur [*4]Mfrs., 46 NY2d 1065, 1067 [1979], quoting CPLR 3212[b]). The proponent of a summary judgment motion must initially make prima facie showing of entitlement to judgment as a matter of law, by tendering sufficient evidence to eliminate any genuine material issue of fact from the case (see Alvarez v. Prospect Hosp., 68 NY2d 320, 324 [1986]). The failure to make such a showing mandates denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad v. New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). If a prima facie showing is made, the burden shifts to the party opposing the motion for summary judgment to come forward with evidentiary proof in admissible form to establish the existence of a material issue of fact which requires a trial (see Zuckerman v. City of New York, 49 NY2d 557, 562 [1980]). General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat the summary judgment motion" (Alvarez v. Prospect Hospital, 68 NY 320, 324-325 [1986]).
Thus, in opposing the motion, plaintiff's expert "must demonstrate 'the requisite nexus between the malpractice allegedly committed' and the harm suffered" (Dallas-Stephenson v. Waisman, 39 AD3d 303 [1st Dept. 2007, quoting Ferrara v. South Shore Orthopedic Associates, P.C., 178 AD2d 364, 366 [1st Dept. 1991]). Moreover, plaintiff's expert must address and refute the specific assertions of defendants' experts with respect to negligence and causation (see Janelle M. v. New York City Health & Hospitals Corp., 148 AD3d 519 [1st Dept. 2017]). "Where the expert's ultimate assertions are speculative and unsupported by any evidentiary foundation the opinion should be given no probative force and is insufficient to withstand summary judgment" (Diaz v. New York Downtown Hospital, 99 NY2d 542, 544 [2002]). Indeed, "[n]ot every instance of failed treatment or diagnosis may be attributed to a hospital or physician's failure to exercise due care" (Bagley v. Rochester Gen. Hosp., 124 AD3d 1272, 1273 [4th Dept. 2014], citing Nestorowich v. Ricotta, 97 NY2d 393, 398 [2002]; Schrempf v. State of New York, 66 NY2d 289, 295 [1985]).
Here, the Court finds that defendants have established prima facie entitlement to judgment as a matter of law by submitting the expert affirmations of a thoracic surgeon, a pulmonologist, and an anesthesiologist, who identified and addressed the medical departures alleged by plaintiffs, and who referenced detailed and specific facts from the medical record in support of their opinions that the moving defendants adhered to good and acceptable medical and hospital standards of care, that the care and treatment rendered to plaintiff did not deviate from accepted medical practice, and that such care and treatment did not proximately cause the alleged injuries (see Hernandez v. Nwaishienyi, 148 AD3d 684, 686 [2d Dept. 2017]).
In opposition, the plaintiff failed to raise a triable issue of fact (see Diaz v. New York Downtown Hosp., 99 NY2d 542 [2002]).
As previously stated, "in order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Tsitrin v. New York Community Hosp., 154 AD3d 994, 996 [2d Dept. 2017]). Here, Dr. Bloze's affirmation was conclusory and speculative and failed to address the contentions/specific assertions of defendants' experts regarding a cause for plaintiff's injury. The expert merely stated, in conclusory fashion, that plaintiff's cervical spine may have been hyperextended during intubation, and his peroneal nerve may have been compressed by the bedrail because his wrists [*5]were restrained.[FN3]
These conclusions were rendered without specific factual references (see, e.g., DiMitri v. Monsouri, 302 AD2d 420 [2d Dept. 2003]). Dr. Bloze likewise failed to specify why a tracheostomy should have been anticipated by a date certain by the ICU staff, and failed to indicate what defendants should have regarding episodes of respiratory distress and positioning in the SICU after December 3, 2016 (see, e.g., Coffey v. Mansouri, 209 AD3d 714 [2d Dept. 2022]).
Finally, while plaintiffs' expert was Mr. Nardone's treating rehabilitation specialist, no foundation was provided that she possessed the requisite knowledge to render her determinations as to the frequency of attempts to intubate and positioning of patients in SICU ( Limmer v. Rosenfeld, 92 AD3d 609 [1st Dept. 2012]; see Steinberg v. Lenox Hill Hosp., 148 AD3d 612, 613 [1st Dept. 2017]; [internal citations omitted; see also Villani v. Kings Harbor Multicare Center, 190 AD3d 534 [1st Dept. 2021]). 
Accordingly, it is
ORDERED that defendants' motion for summary judgment pursuant to CPLR 3212 dismissing plaintiffs' complaint is granted in its entirety; and it is further
ORDERED that the Clerk is directed to enter judgment in favor of all defendants dismissing the Complaint with prejudice.
DATE 5/15/2025
JUDITH N. MCMAHON

Footnotes

Footnote 1:The surgery was performed to treat esophageal cancer in the 62-year-old plaintiff.

Footnote 2:"It is my opinion, to a reasonable degree of medical certainty, that Mr. Nardone's left wrist drop and right foot drop appear to have been direct results of the post-operative treatment he underwent while hospitalized . . . [and] after being weaned off sedation post-operatively on 12/9/16, he exhibited new neurological deficits that he had never demonstrated prior to the 12/1/16 surgery . . . " (id., para. 23).

Footnote 3:This opinion is based in part on an unverified photograph of what appears to be a birthmark on the leg of an unidentified person.