■ VICTORIA DALLAS-STEPHENSON et al., Appellants, v JERRY WAISMAN, M.D., et al., Defendants, and PARK AVENUE MEDICAL IMAGING & MAMMOGRAPHY, P.C., et al., Respondents. [833 NYS2d 89]—

Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered May 5, 2006, which granted the motion by defendants Park Avenue and Vaynshelbaum for summary judgment dismissing the complaint against them, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated against those defendants.

Defendant Dr. Vaynshelbaum was the sole owner and only radiologist at Park Avenue Medical Imaging & Mammography. On February 21, 2001, plaintiff Dallas-Stephenson, then 50 years old, consulted Dr. Vaynshelbaum for a routine mammogram and sonogram. She reported no preexisting breast problems. The results of these tests and physical examination were unremarkable.

In the fall of 2001, Dallas-Stephenson felt a mass in her right breast during a self-exam. She and her husband saw Dr. Vaynshelbaum on November 6 of that year. A mammogram performed on that date showed nothing abnormal. However, Dr. Vaynshelbaum testified at his deposition that his exam found "something there." He stated that the lump had shown "a relatively quick growth," but that the mammogram results made cancer unlikely.

Dr. Vaynshelbaum recommended an immediate biopsy. Plaintiff Stephenson, the husband of Dallas-Stephenson, testified at his deposition that he specifically recalled Dr. Vaynshelbaum telephoning defendant NYU Medical Center to advise that he had a patient with a lump in her right breast which should be biopsied immediately. He also testified that Dr. Vaynshelbaum never stated the lump should be removed that day. Dr. Vaynshelbaum testified that his records indicated he referred Dallas-Stephenson to a surgeon, Dr. Cioroiu, that day for evaluation and consultation, although his records bore the notation "for surgery." He also sent a letter report to the patient's primary care physician, advising that Dallas-Stephenson was immediately sent to NYU Medical Center for biopsy, and that she was scheduled to see Dr. Cioroiu for surgery.

At her first deposition, Dallas-Stephenson did not recall Dr. Vaynshelbaum discussing with her having the lump removed or a referral to a surgeon, particularly Dr. Cioroiu. However, she also indicated that she was having problems with the questions due to fatigue, and the deposition was adjourned.

At her second deposition, she was asked if Dr. Vaynshelbaum had scheduled her to see "Dr. Cioroiu for surgery that day," and she said no. In her affidavit in opposition to the motion for summary judgment, she stated Dr. Vaynshelbaum never referred her to Dr. Cioroiu on November 6, and never advised her to see a surgeon or to have the lump removed.

After leaving Vaynshelbaum's office, plaintiffs went straight to NYU Medical Center and saw defendants Drs. Moreira, a pathologist, and Waisman, a breast cancer specialist. Moreira performed a "fine needle aspiration" to obtain a tissue sample from the lump for analysis. He found the lump unlikely to be

breast cancer based on its texture, shape and composition. He did state at his deposition that it was uncommon for this type of lump to develop in a 50-year-old woman.

Moreira also testified that he advised Dr. Vaynshelbaum of his findings that day by telephone, and both agreed the lump should be removed. Moreira's consultation sheet, which was also sent to Dr. Cioroiu, contains a note that due to the quick growth of the tumor, removal is recommended. Dallas-Stephenson testified at her deposition that she specifically asked Moreira twice if this tumor could ever become cancerous and he replied in the negative both times. When she asked if it should be removed, Moreira stated "you can if you want." Dallas-Stephenson testified that based on this conversation, she saw no need to look into having the tumor removed. Moreira, however, believed she agreed to have it removed as soon as possible.

Both plaintiffs testified that they did not receive calls or other communication from Dr. Vaynshelbaum to come in for follow-up exams. Dr. Vaynshelbaum, however, testified his office had a procedure to follow up contact with patients through letters and telephone calls. Although he did not know of his own knowledge whether Dallas-Stephenson was actually contacted, his records indicate that a "follow up letter" was sent on April 16, 2002, and a message left on plaintiff's answering machine on May 8. It is clear, however, that he did not personally contact Dallas-Stephenson after speaking with Dr. Moreira and did not personally follow up on whether she made or kept an appointment with Dr. Cioroiu, although he admitted that it was his responsibility to follow up to make sure that a patient referred for surgery kept the appointment.

Dallas-Stephenson kept her annual gynecologist appointment but did not mention the lump in her breast because, as she testified at her deposition, she was seeing Dr. Vaynshelbaum for that problem. During a self-exam in September 2002, she noticed the lump had changed shape and become visibly noticeable. She saw Dr. Vaynshelbaum on October 16 and had an examination, a mammogram and a sonogram. Dr. Vaynshelbaum told plaintiffs that the findings of these tests were "probably" consistent with cancer, due to features of the tumor that were now present but were not there in the prior exam.

There is no dispute that on this occasion, Dr. Vaynshelbaum sent Dallas-Stephenson to Dr. Cioroiu. While he stated he believed the tumor to be a hematoma, he wanted a further examination. In a letter sent to Dallas-Stephenson's gynecologist, Dr. Vaynshelbaum recommended an immediate biopsy by Dr. Cioroiu. Unlike his prior report, he cc'd Dr. Cioroiu on this letter.

Dr. Cioroiu performed an excision biopsy and advised Dallas-Stephenson that she had invasive cancer, and that only a radical mastectomy of the right breast and surrounding area would save her life. She sought a second opinion in December 2002 from Dr. Leslie Montgomery, a breast surgeon at Memorial Sloan-Kettering. Dr. Montgomery found a stage 2 tumor which she believed did not require a radical mastectomy but only a lumpectomy, followed by chemotherapy and radiation treatment. Dallas-Stephenson was still under Dr. Montgomery's care at the time of her deposition.

In support of their summary judgment motion, the radiology defendants submitted an affidavit from a board certified radiologist who found no indication that the lump was not properly evaluated in November 2001, that proper referrals to specialists were made at that time, and that there was no 11-month delay in the diagnosis. Plaintiffs submitted an expert's affidavit stating, inter alia, that Dr. Vaynshelbaum departed from good and accepted medical practice in failing to send the patient for a tissue biopsy, ensure that she saw a surgeon, and obtain the results of the surgeon's examination. Plaintiffs' expert also found the failure to initially advise the patient of the need for a surgical consultation, as well as the failure to follow-up contact to press the need for surgical consultation, to be a departure from accepted medical practice.

The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Once the movant makes the required showing, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact that precludes summary judgment and requires a trial (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

The differences in testimony between the parties regarding whether Dr. Vaynshelbaum referred Dallas-Stephenson to a surgeon and recommended that she have the lump removed in November 2001 involve issues of credibility. The internal contradictions between Dr. Vaynshelbaum's medical files and the patient's report of examination raises additional credibility issues. Such credibility questions preclude the granting of summary judgment (*Bonilla v Petrillo Realty Dev. Corp.*, 237 AD2d 115 [1997]).

To establish a prima facie case of medical malpractice, a plaintiff must show that the doctor deviated from accepted medical practice and also that the alleged deviation proximately

caused her injury (*Koeppel v Park*, 228 AD2d 288, 289 [1996]). A plaintiff's expert opinion must demonstrate "the requisite nexus between the malpractice allegedly committed" and the harm suffered (*Ferrara v South Shore Orthopedic Assoc.*, 178 AD2d 364, 366 [1991]). The threshold question in determining liability is whether the defendant doctor owed the plaintiff a duty of care. This is a question for the court, and generally not an appropriate subject for expert opinion (*see Koeppel*, 228 AD2d at 290). However, a doctor who actually treats a patient has "a duty of care" toward that patient (*McNulty v City of New York*, 100 NY2d 227, 232 [2003]).

Here, Dr. Vaynshelbaum admitted he had found a "relatively quick growth" in the tumor for just a one month's period of time. He insists that he referred the patient to a surgeon and wanted the biopsy done that day. He also advised Dallas-Stephenson's general care doctor that she had an "ACR Category 4" lump, which is a "suspicious finding," i.e., "findings suspicious of malignancy." On the other hand, the "layperson's report" Dr. Vaynshelbaum gave to his patient did not indicate anywhere that the lump was suspicious or possibly malignant, or that some other examinations were necessary. The recommendations portion did not check the boxes for further consultation or surgical consultation, but indicated only "Regular breast self-examination." In short, there were no statements on any reports given to Dallas-Stephenson that indicated any abnormality or condition that required further medical follow-up treatment. Although he had a follow-up procedure in place, he did not know whether she was actually contacted. By his own admissions, Dr. Vaynshelbaum acknowledged it was his responsibility to make sure a patient referred for surgery kept the appointment, yet he made no inquiry as to whether this was done or whether he received reports from Dr. Cioroiu, the surgeon to whom he claims he referred plaintiff in November 2001. Additionally, plaintiffs' expert established a causal connection between the alleged malpractice by the radiology defendants in November 2001 and Dallas-Stephenson's condition. He specified that the lump in her breast, which had first been examined in November 2001, had grown over approximately 10 months into a "2.2 cm invasive ductal carcinoma with metastatic disease to three lymph nodes." By Dr. Vaynshelbaum's own testimony, the lump should have been removed in November 2001. There is no question that by October 2002, the cancer had spread substantially. At a minimum, this raises questions of fact as to whether the delay in treatment possibly attributable to the radiology defendants was not the proximate cause of the injury complained of (*McMahon v Badia*, 195 AD2d 445, 446 [1993]).

Viewing the facts in the light most favorable to plaintiffs (*J.E. v Beth Israel Hosp.*, 295 AD2d 281, 283 [2002], *lv denied* 99 NY2d 507 [2003]), we find questions of fact that preclude the grant of summary judgment. Concur—Mazzarelli, J.P., Marlow, Buckley, Sweeny and Kavanagh, JJ.