WMC Realty Corp. v City of Yonkers (2024 NY Slip Op 51294(U))

[*1]

WMC Realty Corp. v City of Yonkers

2024 NY Slip Op 51294(U)

Decided on September 18, 2024

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 18, 2024
Supreme Court, Westchester County

WMC Realty Corp. and T.A.C. REALTY CORP. on its own behalf and on behalf of those similarly situated, Plaintiffs,

against
City of Yonkers, YONKERS CITY COUNCIL and MIKE SPANO, Defendants.

Index No. 65933/2017

Attorney for Plaintiffs: 
Stephen A. Cerrato, Esq. 
Law Office of Stephen A. Cerrato, Esq. 
475 Tuckahoe Road, Suite 207 
Yonkers, New York 10710 
(914) 476 - 6272
Attorneys for Defendants: 
Robert A. Spolzino, Esq. 
Abrams Fensterman, LLP
81 Main Street, Suite 400
White Plains, New York 10601
(914) 607-7010

William J. Giacomo, J.

In this underlying action, plaintiffs WMC Realty Corp. and T.A.C. Realty Corp. on its own behalf and on behalf of those similarly situated, allege that fees collected for purposes of [*2]fire safety inspections are invalid as an unconstitutional tax. In motion sequence 007, plaintiffs move for an order pursuant to CPLR § 901 for class certification. In motion sequence 008, defendants City of Yonkers, Yonkers City Council and Mike Spano (collectively, defendants) move, pursuant to CPLR 3212, for an order granting summary judgment dismissing the complaint. In motion sequence 009, plaintiffs move, pursuant to CPLR 3212, for an order granting summary judgment in their favor. Motion sequence numbers 007, 008 and 009 are hereby consolidated for disposition.
Papers Considered Mot. Seq. 007 NYSCEF DOC NO. 169-183; 223-226; 279-286
1. Notice of Motion/Memorandum of Law/Exhibits 1-12/Affirmation of Brian W. Warwick, Esq. in Support
2. Affirmation in Opposition of Robert A. Spolzino, Esq./ Exhibit A/Memorandum of Law in Opposition
3. Memorandum of Law in Reply/Affirmation of Brian W. Warwick, Esq. in Reply/Exhibits 1-2
4. Correspondence with the Court (2)
Mot. Seq. 008 NYSCEF DOC NO. 184-206; 249-271
1. Notice of Motion/Statement of Material Facts/Memorandum of Law in Support/ Affirmation of Robert A. Spolzino, Esq. in Support/Exhibits A-J/Affirmation of John Jacobson/Exhibits A-B/Affirmation of Scott Oling/Exhibit A/Affirmation of Christopher DeSantis/Exhibits A-C
2. Memorandum of Law in Opposition/ Affirmation of Brian W. Warwick, Esq. in Opposition/Exhibits 1-8/Correspondence with the Court
3. Memorandum of Law in Reply/Affirmation of Robert A. Spolzino, Esq. in Reply/Exhibits A-I
Mot. Seq. 009 NYSCEF DOC NO. 207-221; 227-248; 272-278
1. Notice of Motion/Memorandum of Law in Support/ Exhibits 1-12/Affirmation of Brian W. Warwick, Esq. in Support
2. Memorandum of Law in Opposition/ Affirmation of Christopher DeSantis/Statement of Material Facts/ Affirmation of Robert A. Spolzino, Esq. in Opposition/Exhibits A-R
3. Memorandum of Law in Reply/Affirmation of Brian W. Warwick, Esq. in Reply/Exhibits 1-5
FACTUAL AND PROCEDURAL BACKGROUND
The Court assumes the familiarity with the record. The facts related to the claims have been set forth in prior decisions/orders thus far issued in Mot. Seqs. 001 rendered by the Honorable Helen M. Blackwood, by the Appellate Division, Second Department in WMC Realty Corp. v City of Yonkers (193 AD3d 1018 [2d Dept 2021]) and by this Court in motion sequence numbers 004, 005 and 006. The pertinent background is set forth as follows: On or about October 3, 2017, plaintiffs filed a class action complaint on their own behalf and on behalf of similarly situated plaintiffs, and a demand for declaratory judgment against defendants. The complaint alleges that the City of Yonkers created a "Yonkers Fire and Building Safety Inspection Program," in order to provide fire and safety inspections for all multi-family dwelling units within the City. The Inspection Program was established pursuant to Article 18 of the Executive Law, entitled the New York State Uniform Fire Prevention and Building Code Act [*3](Uniform Act), as codified in Executive Law § 370 et seq. and the Yonkers Fire and Building Code (see Yonkers Fire and Building Code § 55-1 et seq.). Section 55-7 of the Yonkers Fire and Building Code, entitled Fees for Fire and Building Safety Inspection Program, sets forth the following:
"A. In order to pay for the City of Yonkers Fire and Building Safety Inspection Program, pursuant to which authorized officers and employees of the City of Yonkers inspect residential and business and commercial properties to ensure compliance with applicable codes, including but not limited to the New York State Uniform Fire Prevention and Building Code, the Yonkers Fire and Building Code, the Yonkers Fire Prevention Code, the Multiple Residence Law and other applicable provisions of law, a schedule of fees for classes of occupancies inspected by such program is hereby established."
Properties are required to be inspected at least once every 36 months and owners are expected to pay annual fees ranging from $250 to $1,250. The Program fees are paid by owners of real property other than one and two family dwellings and not-for-profit buildings. 
The complaint alleges that, despite collecting millions of dollars from the inspection fees, only a small number of properties are actually inspected. Plaintiffs WMC Realty Corp. and T.A.C. Realty Corp. are both businesses located in Yonkers who are subject to the safety inspection fee. Plaintiffs allege that their properties have never been inspected, despite paying the fees. In the first cause of action, plaintiffs are seeking, among other things, a declaration that all inspection fees collected during the class period are unlawful and must be refunded. In the second, third, fourth and fifth causes of action, plaintiffs seek to recover for unjust enrichment, breach of contract, negligence and breach of fiduciary duty. The sixth cause of action, alleging a violation of the New York Constitution, states that the imposition of inspection fees violates procedural and substantive due process. Plaintiffs allege that if the owners do not pay the fees, they risk losing the title to their property. However, there is no mechanism to challenge the imposition of fees or to require an inspection program. The complaint also alleges that the inspection fees collected are not being put towards the Fire and Safety Inspection Program. Thus, plaintiffs are seeking a declaration that the inspection fees are invalid as an unconstitutional tax. 
In motion sequence 001, Judge Blackwood granted defendants' pre-answer motion to dismiss in its entirety. The Court found that plaintiffs commenced the action to seek enforcement of the Uniform Act (or also referred to as the NYS Code) or the Yonkers City Code. As the NYS Code does not allow for a private right of action, the complaint was dismissed. 
On appeal, the Appellate Division, Second Department modified Judge Blackwood's decision by denying the motion to dismiss with respect to the sixth cause of action. The Court provided a comprehensive background of the applicable statutes and regulations, including the ones set forth in the Yonkers Fire Code and the Uniform Act. For example, the Court explained the following:
"Pursuant to the regulations promulgated by the secretary of state, '[e]very city, village, town, and county' must enact such 'local law, ordinance or other appropriate regulation' as necessary to administer and enforce the Uniform Code, including, inter alia, fire safety and property maintenance inspections (19 NYCRR 1203.2 [a]; see 1203.3). 'Buildings shall be subject to periodic inspections for compliance with the Uniform Code on a [*4]yearly basis' (19 NYCRR 1202.4 [b]). Executive Law § 381 (2) provides that '[l]ocal governments or counties may charge fees to defray the costs of administration and enforcement.'"
WMC Realty Corp. v City of Yonkers, 193 AD3d at 1020.
In relevant part, at the outset, the Court held that "[t]he Supreme Court properly determined that neither the Uniform Code nor the Yonkers Fire Code creates a private right of action." WMC Realty Corp. v City of Yonkers, 193 AD3d at 1019. However, the Court found that the lower court should have denied the motion to dismiss with respect to the sixth cause of action. The Court explained that "[a] motion to dismiss a declaratory judgment action prior to the service of an answer presents for consideration only the issue of whether a cause of action for declaratory relief is set forth, not the question of whether the plaintiff is entitled to a favorable [disposition]." Id. at 1024 (internal quotation marks omitted). The Court concluded that "[h]ere, the complaint was sufficient to invoke the court's power to render a declaratory judgment as to the rights and other legal relations of the parties to a justiciable controversy." Id. 
Instant Motions
Plaintiffs and defendants move for summary judgment in their favor and plaintiffs also move for class certification. In sum, the remaining viable claim seeks a declaration that the inspection fees are invalid as an unconstitutional tax.
Defendants' Arguments
In support of their motion and in opposition to plaintiffs' motion, defendants argue that the Program Fee is not an unconstitutional tax because the City spends more on the program than it receives from the Program Fees. In support of the motion, defendants submit the affirmation of John Jacobson, Budget Director for the City of Yonkers. Jacobson affirmed that "the cost of the Yonkers Fire and Building Safety Inspection Program includes the expenses incurred by Yonkers Fire Prevention as well as inspections conducted by the Yonkers Buildings Department." Further, the "Yonkers Fire Prevention expenses include the costs of the Yonkers Fire Prevention Department, Apparatus Field Inspections, wages and employee benefits for the same, fire vehicle costs, and administrative/office expenses." For instance, the City of Yonkers "conducts Apparatus Field inspections every week day." 
In Fiscal Year 2021, the Yonkers Fire Department incurred $5,819,242 in expenses as part of the Program. This did not "include any costs incurred by the Building Department as part of the Program." However, the City of Yonkers collected $3,289,500 in fees in Fiscal Year 2021for the Program. In conclusion, Jacobson affirmed that, for Fiscal Year 2021, the "Yonkers Fire Department incurred $2,529,742 more in costs as part of the [Program] than the City collected in fees."
Defendants claim that, assuming arguendo, the funds collected through the Program exceeded the cost, the Program Fee cannot be considered a tax because it is being used to cover expenses of the Program and not general Fire Department expenses. Defendants explain that inspection fees are not paid in exchange for safety inspection services. Rather, the Program encompasses a broad range of inspections and is not limited to fire safety inspections. For example, the cost of the Program includes the costs of the Fire Prevention Department, in addition to the costs of apparatus field inspections. 
In support of these assertions, defendants submit the testimony of Christopher DeSantis, Deputy Chief of the Yonkers Fire Department. DeSantis testified that the objective of the Fire [*5]Prevention Program is to ensure all of the multifamily buildings within the City of Yonkers have a safety inspection every year. DeSantis testified that the Program is a "combination of the apparatus field inspections, the hydrant inspections, vacant building inspections, yearly and triannual inspections. The program, as a whole, encompasses these components." DeSantis also submitted an affirmation, affirming that he "assisted Mr. Jacobson in preparing the estimate and provided information specifically relevant to apparatus field inspections and vehicle costs."
DeSantis testified that the apparatus field inspections are "inspections performed to identify or- they are inspections that have a multifaceted purpose. They help with building familiarization. They identify life safety issues that need to be corrected." During these inspections, "[t]here is what is called a violation correction order which can be used as a checklist." There is no uniform way to track the inspections and the individual fire companies are responsible for their own records.
Finally, plaintiffs also claim that there were no fire inspections at their properties and that the Program does not maintain sufficient written records or documentation to be able track which properties have been inspected. According to defendants, these claims are irrelevant, as the Appellate Division has already concluded that there is no private right of action to enforce the fire codes.
In any event, defendants claim that the Yonkers Fire Department visited the plaintiffs' premises on five occasions and the absentee landlords would not have known whether or not an inspection occurred. In support of this contention, defendants point to the testimony from Felix Cristafaro.[FN1]
During the deposition, Cristafaro was shown a Fire Department "completed inspections" record indicating that one of his properties was inspected on February 19, 2020. The record reflected, "FD-CO Inspection." Cristafaro testified that he was not aware of that inspection or of any other inspection of his property. He confirmed that his tenants normally would not tell him if there was an inspection or if law enforcement came by. During the deposition, defendants showed Cristafaro documented instances where the Fire Department visited the premises for various reasons. Cristafaro was not aware of any of these visits.
Plaintiffs' Arguments
According to plaintiffs, the plain reading of the Yonkers Fire Code indicates that the Program Fee is intended to pay for inspections. Plaintiffs argue that the City is unfairly using the Program Fees paid by plaintiffs to pay the general expenses of the Yonkers Fire Department and not for inspections on plaintiffs' properties. Plaintiffs claim that there are no actual 55-7 inspections performed, nor are there procedures in place to track the number of inspections performed. Plaintiff claims that the only routine inspections performed are the apparatus field inspections and inspections related to violation correction orders. Further, for instance, an apparatus field inspection is not the same as a § 55-7 inspection, as at times, the firefighters conducting those inspections allegedly do not even leave the firetruck. With respect to the apparatus field inspections, these are purportedly conducted on all properties and not just the ones who pay the Program Fees. 
In sum, plaintiffs believe there is no Program apart from the general work the Fire Department performs for the benefit of all Yonkers citizens. As a result, because the funds are used on items which benefit the general public and not on inspecting the properties of those that [*6]pay the fees, the fees are unconstitutional taxes. 
Regarding Cristafaro, plaintiffs argue that they have paid thousands of dollars to the City of Yonkers but have yet to receive one routine preventative fire and building safety inspection. 
DISCUSSION
I. Summary Judgment
"The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law." Dallas-Stephenson v Waisman, 39 AD3d 303, 306 (1st Dept 2007). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party." William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 (2013) (internal quotation marks and citation omitted). Upon proffer of evidence establishing a prima facie case by the movant, "the party opposing a motion for summary judgment bears the burden of produc[ing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact." People v Grasso, 50 AD3d 535, 545 (1st Dept 2008) (internal quotation marks and citation omitted). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility." Ruiz v Griffin, 71 AD3d 1112, 1115 (2d Dept 2010) (internal quotation marks and citation omitted).
Validity of Fees
Pursuant to Executive Law § 381 (2), "[l]ocal governments or counties may charge fees to defray the costs of administration and enforcement." Courts have held that "[a] fee charged by a municipality in connection with the exercise of powers delegated to it by the Legislature must be reasonably necessary to the accomplishment of the statutory command." Matter of Harriman Estates at Aquebogue, LLC v Town of Riverhead, 151 AD3d 854, 856 (2d Dept 2017). However, "[f]ees cannot be charged to generate revenue or to offset the cost of other governmental functions." Id. Further, "[o]nly legislative bodies have the power to impose taxes, which are exacted from citizens to defray the general costs of government unrelated to any particular benefit received by that citizen." Falk v Nassau County, 215 AD3d 801, 802 (2d Dept 2023) (internal quotation marks and citations omitted). 
Plaintiffs argue that the Program Fee is an unconstitutional tax because the fees are excessive, improper and are being used for general expenses of the Fire Department. According to plaintiffs, there is no evidence to show that defendants have used the Program fees to conduct the inspections for the plaintiffs and others who paid these fees. 
However, plaintiffs' arguments are flawed for numerous reasons. At the outset, the Appellate Division has already held that "[c]ontrary to the plaintiffs' contentions, Yonkers Fire Code § 55-7 does not provide that the defendants will provide fire and safety inspections in exchange for an annual fee. Instead, it merely established a schedule of fees for classes of occupancies inspected to offset the cost of administering and enforcing the program." WMC Realty Corp. v City of Yonkers, 193 AD3d at 1022 (internal quotation marks and citations omitted) 
In addition, the plain reading of the statute indicates that a schedule of fees is collected from property owners to pay for the inspection and safety program, not just the inspections of the buildings. As defendants testified, the Program includes the costs of the Yonkers Fire Prevention Department, which would encompass Apparatus Field Inspections, wages and employee benefits for the same, fire vehicle costs, and administrative/office expenses hydrant [*7]inspections, among other things. For example, apparatus field inspections are inspections of commercial and residential properties to assist with building familiarization and identify life safety issues. It is undisputed that apparatus field inspections have taken place at properties who pay the Program Fee. While plaintiffs argue that apparatus field inspections cannot be considered code inspections, the Yonkers Fire Code does not limit what types of inspections are included under the Program. Accordingly, defendants have established that the Program is a comprehensive safety compliance program, not just limited to § 55-7 inspections. 
Defendants also established, prima facie, through the submission of budgets and testimony, that the Program Fees imposed by the City of Yonkers are reasonably necessary to the accomplishment of the Program and are not used to defray the general cost of the Yonkers Fire Department. See e.g. Cella v Suffolk County, 220 AD3d 911, 913 (2d Dept 2023). The record indicates that the total budget for the Yonkers Fire Department for Fiscal Year 2021 was $74,369,758. Jacobson affirmed that the Program cost approximately $5.8 million and that only $3.2 million in fees were collected. These mathematical figures were verified by an independent accountants' report. Thus, defendants have demonstrated that the Program fees collected far exceeded the cost of administering the Program. Although plaintiffs challenge some of the salaries included in the cost of the Program, among other items, "it is not necessary for a municipality to establish exact congruence between the total expenses incurred by it in performing a fee-based application review function and the total fees charged to the applicant." WG Woodmere, LLC v Nassau County Planning Commn., 2024 NY App Div Lexis 4432, *4 (2d Dept 2024).
In opposition, plaintiffs only speculate that the Program fees are used to pay the general expenses of the Yonkers Fire Department, which benefit all Yonkers Citizens. As noted by defendants, pursuant to the Program, owners of the larger properties are paying for a comprehensive program that inspects and ensures the safety of their properties. While, for example, the inspection of a hydrant in front of a property benefits the public and/or other Yonkers citizens who do not pay the Program Fee, it is primarily performed to ensure the safety of the property. As another instance, DeSantis affirmed that "[f]or example, if a member of Fire Prevention is conducting an inspection for a single apartment as part of a construction permit, that individual will also inspect community spaces/publicly accessible parts of the larger apartment building. These inspections are part of the Yonkers Fire and Building Safety Inspection Program." 
Plaintiffs again attempt to assert claims related to the enforcement of the Program. For example, plaintiffs argue, among other things, that they are not getting the inspections they are entitled to, that the Program is not well organized and that the inspections performed are not the right type of inspections. However, all of these contentions have been addressed, and rejected, by the Appellate Division. As previously mentioned, the Appellate Division noted that the "administrative enforcement of the statute was contemplated by the legislature." WMC Realty Corp. v City of Yonkers, 193 AD3d at 1021. Further, "[t]he Uniform Act provides the secretary of state with enforcement authority if the secretary determines that a local government failed to administer and enforce the Uniform Code in accordance with minimum standards." Id. at 1020. The Court found that "a private right of action [to enforce the Yonkers Fire Code] would not be consistent with the legislative scheme." Id. at 1021.
Finally, it is well established that "[l]egislative enactments enjoy a strong presumption of constitutionality. While the presumption is not irrefutable, parties challenging a duly enacted [*8]statute face the initial burden of demonstrating the statute's invalidity "beyond a reasonable doubt'. Lavalle v Hayden, 98 NY2d 155, 161 (2002) (internal quotation marks and citations omitted).Plaintiffs also claim the statute is "invalid" because they allegedly never received an inspection. To the extent that plaintiffs could even maintain this argument separate from claiming a private cause of action, plaintiffs have not met their burden to demonstrate the statute's invalidity beyond a reasonable doubt. First, thousands of properties are subject to inspection and it is undisputed that there are some written records for inspections. As a result, the alleged failure to inspect one property would not render a statute unconstitutional. Next, the record indicates that plaintiffs' properties were visited and inspected. The owner of the properties, an absentee landlord, testified that he was unaware of any visits by the Fire Department and testified that his tenants do not usually tell him if the Fire Department has visited. Therefore, plaintiffs have failed to prove beyond a reasonable doubt that there were missed inspections. Although there does not appear to be a uniform way the different City Fire Departments document violations and inspections, a motion for summary judgment is not the proper way to challenge a lack of systemic protocols. 
Accordingly, defendants established prima facie that the Program Fees imposed pursuant to Section 55-7 of the Yonkers Fire Code are a permissible fee rather than an unconstitutional tax and their motion for summary judgment is granted. In opposition, plaintiffs failed to raise a triable issue of fact and also fail to support their own motion for summary judgment. 
II. Motion for Class Certification (motion sequence 007)
Plaintiffs moved for class certification. However, it is well settled that the "Court need not address the parties' arguments regarding class certification where it finds that the underlying claims are dismissed." Deide v Day, 2024 US Dist Lexis 128941, *14 (SD NY 2024). Accordingly, plaintiffs' motion for class certification is denied as moot.
All other arguments raised on this motion and evidence submitted by the parties in connection thereto have been considered by this court notwithstanding the specific absence of reference thereto.
CONCLUSION
Accordingly, it is hereby
ORDERED that plaintiffs' motion pursuant to CPLR § 901 for class certification (motion sequence 007) is denied; it is further
ORDERED that defendants' motion pursuant to CPLR 3212, for an order granting summary judgment dismissing the complaint (motion sequence 008) is granted, and the complaint is dismissed with costs and disbursements to said defendants as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further
ORDERED that plaintiffs' motion pursuant to CPLR 3212, for an order granting summary judgment in its favor (motion sequence 009) is denied; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
Dated: September 18, 2024
White Plains, New York
HON. WILLIAM J. GIACOMO, J.S.C.

Footnotes

Footnote 1:Plaintiffs are two businesses owned by Felix Cristafaro and family.