| **Mojica v City of New York** |
|:---:|
| 2025 NY Slip Op 31962(U) |
| June 3, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 450803/2018 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. HASA A. KINGO**                                    PART                    05M

*Justice*

-----------------------------------------------------------------------X

LISA MOJICA,                                                     INDEX NO.          450803/2018

Plaintiff,                                 MOTION DATE              N/A

- v -                                           MOTION SEQ. NO.          002

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, CORRECTION
OFFICER MARIO CARRILLO                                    **DECISION + ORDER ON
MOTION**

Defendant.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82

were read on this motion for                          SUMMARY JUDGMENT                          .

With the instant motion, the City of New York and the New York City Department of Correction("DOC")(collectively, "the City") seek a judgment as a matter of law dismissing all causes of action asserted against them by Plaintiff Lisa Mojica ("Plaintiff"), as well as any cross-claims filed by co-defendant Correction Officer Mario Carrillo ("Carrillo"), pursuant to CPLR § 3212. In essence, the City argues that it bears no liability because Carrillo's off-duty, personal conduct in accidentally discharging his Glock 19 handgun at Mamasita Bar & Grill cannot properly be imputed to the City, and because the City lacked any actual or constructive knowledge of Carrillo's purportedly dangerous propensity to mishandle firearms. Plaintiff and Carrillo oppose, raising ostensible factual disputes concerning Carrillo's training, the circumstances of the shooting, and whether Carrillo might be considered to have been, at least in part, furthering DOC interests when he met with Plaintiff.

## BACKGROUND AND PROCEDURAL HISTORY

On the evening of May 23, 2017, Plaintiff, a prospective DOC recruit, went to Mamasita Bar & Grill in Manhattan with a mutual friend, purportedly believing she might meet an officer and learn more about life within DOC. Carrillo, off duty and in civilian attire, arrived to speak with Plaintiff supposedly because she was interested in joining DOC. After some initial conversation, Carrillo reached for his personally owned, department-authorized Glock 19 and either began to show Plaintiff how it operated or else the weapon slipped from his waistband. In either event, Carrillo's finger met the trigger, the pistol discharged, and the bullet struck Plaintiff in her right foot. In the process, Carrillo shot himself in the right ring finger.

Following the shooting, both Plaintiff and Carrillo were transported to Bellevue Hospital. The New York City Police Department ("NYPD") investigated, and Carrillo was criminally

**450803/2018   MOJICA, LISA vs. CITY OF NEW YORK**                          **Page 1 of 8**
**Motion No.  002**

[* 1]

charged with Assault in the Third Degree under Penal Law § 120.00(3) (criminal negligence), to which he pleaded guilty. He received a sentence of three years' probation. Simultaneously, DOC conducted an administrative investigation wherein Carrillo, who had no prior disciplinary history related to firearm misuse or neglect, accepted forfeiture of forty-six days of accumulated leave and served a fourteen-day suspension. Notwithstanding DOC's concern, Carrillo ultimately returned to full duty in 2018 and continued in DOC service until his retirement in November 2020. At no point before May 2017 was Carrillo accused of mishandling a firearm or engaging in violent or negligent conduct. Indeed, from his initial DOC employment in 2012 through the calendar year 2016, Carrillo underwent annual requalification on his Glock 19, during which his weapon was physically inspected for defects (Instructor Quinn EBT, p. 45–46; Employee Qualification and Shooting History, Ex. E), and he never failed to demonstrate both accuracy and safe handling.

On March 13, 2018, Plaintiff sued the City, DOC, and Carrillo, asserting claims of negligence in hiring, retention, training, supervision, and entrustment, as well as asserted vicarious liability under respondeat superior. The City answered, asserting that Carrillo was off duty and acting outside the scope of his employment at the time of the shooting, and that it had no actual or constructive notice of any dangerous propensity that would render it liable. Carrillo likewise answered, interposing cross-claims against the City for alleged negligent training. After completion of full discovery—including depositions of Carrillo and DOC firearms instructor James Quinn—DOC moved for summary judgment on November 21, 2024, bringing that issue before this court.

## ARGUMENTS

The City contends that Carrillo's actions on May 23, 2017, took place entirely outside the scope of his employment and that, as a matter of law, it cannot be held vicariously liable for an off-duty accident. Carrillo was dressed in civilian clothes, off the clock, at a restaurant unrelated to his official duties, and was not performing any assignment for DOC. The City relies on decades of precedent holding that an officer's off-duty misadventures—absent any demonstration that the officer was furthering the employer's business—lie beyond respondeat superior (*see Perez v. City of New York*, 79 AD3d 835, 836–837 [2d Dept 2010]; *Cardona v. Cruz*, 271 AD2d 221, 222 [1st Dept 2000]; *Claudio v. Sawyer*, 126 AD3d 616 [1st Dept 2015]).

Moreover, the City asserts that it had neither actual nor constructive notice of any risk posed by Carrillo. From the date he joined DOC in 2012 until May 2017, Carrillo had an unblemished record with no prior accidental or intentional discharges. He completed annual requalification for both his duty weapon and his off-duty Glock 19 (Ex. E), during which firearms instructors physically inspected the weapon for safety, and Carrillo passed each year without remediation (Instructor Quinn EBT, p. 45–46; Ex. J). Carrillo himself acknowledged in writing that he "understood that possession of a firearm is a serious and personal responsibility" and that he was "familiar with the basic safety rules, principles of handling and safeguarding a firearm" (Request for a Personal Handgun, Ex. J). The City emphasizes that DOC's Firearms Policy and Procedures (Ex. G) clearly states that off-duty firearm carriage is optional and that each officer must exercise "the highest degree of care and handling…. when carrying a firearm off-duty." Those policies were fully disclosed to Carrillo, and no evidence suggests any deviation from proper

450803/2018  MOJICA, LISA vs. CITY OF NEW YORK                                            Page 2 of 8
Motion No.  002

2 of 8

protocol prior to May 23, 2017. Accordingly, the City maintains that no reasonable inference of negligent training, hiring, or supervision can be drawn.

Plaintiff argues that there is a triable issue of fact on whether Carrillo was acting, at least in part, within the scope of his employment because he was discussing DOC employment with her, a prospective candidate, thereby furthering DOC's interests. Plaintiff contends that Carrillo's testimony that he "told [Plaintiff] to get armed quickly… because you could run into former inmates on the street" (Carrillo EBT, p. 35–36) demonstrates that the encounter was not purely personal, but rather had an element of recruitment and promotion of DOC. She urges that, if Carrillo was recruiting or advising on behalf of DOC—even informally—that act could tether the incident to the City's interests.

Plaintiff also maintains that, contrary to the City's assertions, there is substantial evidence in the record raising genuine issues of material fact concerning the adequacy of Carrillo's training on his off-duty Glock 19. She highlights Carrillo's testimony that he was trained primarily on the Smith & Wesson duty pistol and that his instruction on the Glock was limited to firing for accuracy; he admitted that "there was not that much training on the Glock" (Carrillo EBT, at p. 23), that he did not know whether a round remained in the chamber (*id*. at p. 52–53), and that he had never personally observed any DOC range officers inspect his Glock during requalification (*id*. at p. 60–61). To Plaintiff, that record evidence suggests Carrillo was neither taught nor supervised to a degree sufficient to prevent his lapse on May 23, 2017.

Finally, Plaintiff contends that the weapon itself—a Glock 19, which Carrillo acknowledged lacks a manual safety (Carrillo EBT, p. 41; p. 63)—should have triggered heightened scrutiny. Because she was not provided any proof of an in-person inspection by Carrillo at each requalification, Plaintiff argues there is a triable issue whether DOC's policy regarding off-duty firearm inspections was in reality insufficient and whether the weapon might have been defective or unnoticed in some latent danger.

Carrillo, for his part, concedes that the discharge was accidental but asserts that his attempt to secure a falling weapon was a direct consequence of DOC's failure to train him adequately for Glock-specific mechanics. He claims DOC authorized only limited instruction—"they taught me how to take it apart, that they taught me safety procedures, that [the Glock] is a heavier gun that carries fifteen bullets, that you should not be pointing it at people or removing the magazine without being sure the chamber is empty" (Carrillo EBT, p. 23–24)—but that this training was insufficient, given that he was not tested on chamber checks or holster usage and that his requalification tests measured only marksmanship, not safe handling. He further suggests that the DOC's approach to off-duty firearm oversight, while technically required to include inspection, was never enforced in practice—he "never saw them inspect [his] Glock" at the range (id. at p. 61). Because of these training and supervisory shortcomings, Carrillo argues the City cannot meet its prima facie burden of showing absence of negligence.

Thus, he urges that a reasonable juror could conclude that DOC's purportedly optional off-duty firearm policy—codified in DOC Firearms Policy 4511R-A (Ex. G, p. 65)—in conjunction with minimal Glock instruction, was negligent and proximately caused the accident. He further insists that his conversation with Plaintiff had an official dimension, as he was describing DOC-

450803/2018   MOJICA, LISA vs. CITY OF NEW YORK                                      Page 3 of 8
Motion No.  002

3 of 8

[* 3]

related risks and urging her to pursue proper training—actions, he contends, done in furtherance of DOC's interests.

## DISCUSSION

It is well-settled that "[t]he proponent of a summary judgment motion must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Dallas-Stephenson v Waisman*, 39 AD3d 303, 306 [1st Dept 2007]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Upon such showing, the burden shifts to the opposing party to demonstrate a triable issue of material fact (*Zuckerman v City of New York*, 49 NY2d 557 [1980]). If there is any doubt as to whether a material dispute exists, summary judgment must be denied (*Dallas-Stephenson*, 39 AD3d at 306, *supra*).

The doctrine of respondeat superior imposes vicarious liability upon employers for torts committed by employees only where those acts are performed in furtherance of the employer's business and within the scope of employment (*Cardona*, 271 AD2d 221, *supra*; *Claudio*, 126 AD3d 616, *supra*).

Here, it is undisputed that Carrillo was off duty when the incident occurred. He was wearing civilian clothes, was not at a DOC facility, and was not working or in uniform. Under New York law, an officer's tortious conduct is within the scope of employment only if undertaken during the performance of job duties or in furtherance of the employer's interests[1] (*Cardona*, 271 AD2d at 222, *supra*). This court therefore finds that Carrillo's presence that evening was personal, social, and voluntary.

Although Plaintiff emphasizes that Carrillo conversed with her about obtaining a firearm and working at DOC, brief "recruiting" or "advising" conversation alone cannot transform a social evening into a work-related activity. In *Perez v. City of New York*, a police officer off duty fired his weapon at motorists during a social confrontation at a friend's apartment. The Appellate Division, Second Department, held that the City was entitled to summary judgment, noting that the defendant's actions on the date of the incident were wholly personal in nature and that he was off duty, engaged in a social activity where he planned to consume alcohol (*Perez*, 79 AD3d at 836, *supra*). Similarly, in *Claudio* (126 AD3d 616), a police officer shot a civilian while off duty in a restaurant. The Appellate Division, First Department, rejected municipal liability because "defendant's act of shooting the decedent was a private, intentional act that occurred outside the scope of his employment" (*id*. at 616). The mere fact that Carrillo was discussing the job or encouraging Plaintiff to train as an officer does not render his entire presence that evening part of his employment.

---

[1] It is telling that the City has elected not to provide a defense for Carrillo under General Municipal Law § 50-k(2)— a decision that speaks volumes. Pursuant to that statute, the City's duty to defend an employee arises only upon a determination by the Corporation Counsel that the alleged conduct occurred "while the employee was acting within the scope of his public employment and in the discharge of his duties," and that it was not "in violation of any rule or regulation of his agency." The City's refusal to extend representation to Carrillo thus reflects its own considered conclusion that his actions fell outside the bounds of lawful public service. This determination is both legally significant and substantively damning.

**450803/2018  MOJICA, LISA vs. CITY OF NEW YORK**
**Motion No.  002**
**Page 4 of 8**

4 of 8

In addition, Carrillo was not in any official recruiting capacity: he was neither scheduled nor compensated for any recruitment activity, nor was he functioning as a supervising or managerial official in connection with Plaintiff's prospective employment. Indeed, his testimony ("I don't remember" what they discussed; "the only thing I believe I stated to her is 'you get trained on how to use it,'" Carrillo EBT, p. 38) reveals a casual, non-official exchange. Public policy would be strained to hold that personal conversations about work, undertaken at a bar after hours, constitute the "furtherance" of DOC's interests. People would refrain from discussing their careers in everyday settings for fear of municipal liability. Accordingly, no reasonable juror could conclude that Carrillo's shooting of Plaintiff, even if preceded by informal discussion about DOC, occurred in the course of his employment.

Thus, the City cannot be held vicariously liable under respondeat superior, and summary judgment on this basis is warranted.

Even if Carrillo's actions could somehow be deemed, in part, to have furthered DOC interests—which this court rejects—Plaintiff must also establish that the City knew or should have known of Carrillo's propensity to mishandle firearms, thereby making the accident foreseeable. It is well-established that negligent supervision or training claims require a showing that the employer had "actual or constructive knowledge" of the employee's dangerous propensities (*Moore Charitable Found. v. PJT Partners, Inc*., 40 NY3d 150, 157 [2010]; *Olsen v. Butler*, 227 AD3d 916, 918 [2d Dept 2024]). A prior incident similar in nature is ordinarily necessary to impute such knowledge (*see Olsen*, 227 AD3d at 918, *supra*).

Here, Carrillo testified unequivocally that he never had a prior unintentional discharge, nor any disciplinary actions related to firearms, from the time he began working for DOC in 2012 through May 2017 (Carrillo EBT, p. 62–63). His personnel file is devoid of any reprimands or complaints involving firearm misuse (DOC personnel records, Ex. F). Even after the 2017 incident, DOC's disciplinary panel concluded that suspension plus forfeiture of unused leave was the appropriate remedy; DOC did not uncover any hidden pattern or cause for immediate termination. Plaintiff's assertion that Carrillo was "confused" or "unaware" of Glock specifics does not constitute prior notice, because there is no evidence of any prior accident or disciplinary hearing that flagged that confusion.

In *Wyatt v. State of New York* (176 AD2d 574 [1st Dept 1991]), a correction officer shot two motorists during an off-duty altercation. The Appellate Division, First Department, found that the state was on notice because that same officer had shot a dog two years earlier under similarly volatile circumstances. Here, however, this was Carrillo's first and only negligent discharge. As such, mere speculation or hindsight cannot establish foreseeability. Indeed, As the Appellate Division, Third Department, held in *Schrader v. Board of Education of Taconic Hills Central School District* (249 AD2d 741, 743 [3d Dept 1998]), A finding of negligent supervision must rest on a demonstrable basis for concluding that the harm was foreseeable. Here, nothing in Carrillo's conduct prior to the incident provides a sufficient foundation to establish that the City had either actual or constructive notice.

Indeed, Carrillo's unblemished record and consistent safe performance in qualification drills (Ex. E) negate any inference of foreseeable misconduct. Under these circumstances, no

**450803/2018   MOJICA, LISA vs. CITY OF NEW YORK**
**Motion No.  002**

**Page 5 of 8**

[* 5]

reasonable jury could find that DOC should have foreseen Carrillo's unrelated, off-duty lapse and therefore was negligent in allowing him to carry a personal weapon. Because the absence of notice is fatal to negligent hiring, retention, training, or supervision claims, summary judgment must be granted.

Plaintiff emphasizes that Carrillo testified to minimal Glock training—he was taught only basic mechanics, to handle the pistol safely, and annual requalification measured only accuracy, not in-depth safety checks (Carrillo EBT, p. 23–24; p. 59). Yet Carrillo also acknowledged he was taught that "you should not be pointing [the Glock] at people, you should not be taking it out," and that he was tested each year by shooting from a holster and demonstrating safe disassembly (*id*. p. 23–24; *id*. p. 59). Instructor Quinn's testimony confirms that each requalification with a PPF included a physical inspection of the weapon to ensure functionality and absence of defects (Quinn EBT, p. 45–46). Thus, DOC's policy expressly required:

> "Although authorized, it is not mandatory to carry a personal handgun while off-duty. Discretion should be used when the member has prior knowledge of circumstances that may increase the chance of loss or theft of the firearm… Members shall exercise the highest degree of care in handling and/or safeguarding firearms both on and off duty. Failure to exercise such care shall be deemed neglect of duty and shall result in disciplinary action."
> (DOC Firearms Policy & Procedures, 4511R-A, Ex. G at p. 65.)

No evidence in the record shows that DOC deviated from that written policy. Carrillo's testimony that "there was not that much training on the Glock" (Carrillo EBT, p. 23) must be viewed in context: he personally admits to additional training regarding how to disassemble, reassemble, and holster the weapon, and to passing a written exam (*id*. p. 23–24). He further admitted he was aware the Glock lacks a manual safety ("Glocks don't have a safety," *id*. p. 41), that he should have carried it in a holster, and that he "understood how to use the Glock 19" (*id*. p. 58). His failure to holster the weapon and to perform a chamber check was a personal decision, not a product of DOC's training deficiency.

Even assuming arguendo that DOC's training emphasis was primarily on the duty-issue Smith & Wesson, any deficiency was latent and undiscoverable absent a prior incident, and Carrillo never asked for additional Glock training. He could have sought further instruction independently but chose not to do so. "[F]ailure to guard against a remote possibility of accident, or one which could not, in the exercise of ordinary care, be foreseen, does not constitute negligence" (*Yusko v. Remizon*, 280 AD 637, 639 [3d Dept 1952]). The minimal procedural nuances of Glock-specific training do not create a triable issue given the absence of any prior mishap.

To the extent Plaintiff suggests that DOC's policy itself is defective, the claim fails for lack of an actionable municipal policy or custom. Under *Monell v. New York City Department of Social Services* (436 US 658 [1978]), a municipality cannot be held liable under a theory of respondeat superior; rather, liability must be predicated on a "policy or custom" that is the "moving force" behind a constitutional or tortious wrong. Here, Plaintiff points only to DOC's written firearms policy, which, by its terms, mandates annual requalification and a "highest degree of care" in

**450803/2018   MOJICA, LISA vs. CITY OF NEW YORK**
**Motion No.  002**

**Page 6 of 8**

6 of 8

[* 6]

handling off-duty firearms. Although Plaintiff argues that *de facto* DOC practice did not match its *de jure* policy, no evidence supports such a widespread or settled departure. Carrillo's own qualification documents and Instructor Quinn's deposition prove that the policy was followed. Without proof of a persistent, widespread custom deviating from the written policy, or an express directive encouraging lax Glock training, no *Monell* claim can stand.

Insofar as Plaintiff seeks to impose liability on the City for general negligent training or certification of Carrillo in connection with his off-duty, personal firearm, that cause of action is without merit and must be dismissed. The evidentiary record is unequivocal: Carrillo underwent mandatory annual firearms training and qualification; he personally certified his understanding of both the operation of his Glock 19 and the DOC's applicable guidelines; and he expressed no concern regarding the weapon's functionality or his training. He testified to knowing how to disassemble the firearm, and acknowledged receiving specific instruction regarding its safe handling. There is no evidence in the record—none—that the Glock 19 had any history of malfunction or accidental discharge, or that the City had any reason to foresee the tragic deviation from standard protocol that ultimately occurred.

It has long held that "there must be some foundation upon which the question of foreseeability of harm may be predicated, i.e., at least a minimal showing as to the existence of actual or constructive notice" (*Schrader v. Bd. of Educ. of Taconic Hills Cent. Sch. Dist.*, 249 AD2d 741, 743 [3d Dept 1998]). No such foundation exists here. Indeed, the undisputed facts foreclose any finding that the City had notice—actual or constructive—of any risk of negligent or criminal misuse of the weapon by Carrillo. A party cannot be held liable for failing to anticipate a remote or unforeseeable accident—negligence does not arise from the mere fact of injury, but from the failure to act with reasonable care in the face of a known or reasonably foreseeable risk. Where no such risk is apparent, the law does not demand clairvoyance. This was, as Carrillo's own guilty plea confirms, an act that contravened the standard of care—not a failure of municipal oversight. In the absence of any triable issue of fact as to foreseeability, training, or notice, the City is entitled to summary judgment as a matter of law.

Finally, Plaintiff and Carrillo emphasize conflicting recollections of whether Carrillo intentionally displayed the weapon or dropped it and then tried to catch it. Even assuming material conflict on that peripheral point, it does not affect the dispositive questions: (1) the absence of scope-of-employment, and (2) the absence of notice or foreseeability. The precise mechanics of how the bullet was fired cannot inject a genuine issue of fact relevant to municipal liability. As the Appellate Division, Third Department, noted in *Schrader*, "there must be some foundation upon which the question of foreseeability of harm may be predicated, i.e., at least a minimal showing as to the existence of actual or constructive notice" (249 AD2d at 743, *supra*). To be sure, a material issue of fact exists when reasonable minds could differ as to a disputed matter, rendering summary judgment inappropriate. That is not the case here, where there is no genuine dispute regarding the material facts—namely, that Carrillo was off duty, had no prior incidents, and received annual requalification—which does not warrant continued litigation.

The record incontrovertibly demonstrates that Officer Carrillo's off-duty accident occurred while he was not performing any DOC duty, in civilian clothes at a non-work location, and without

450803/2018   MOJICA, LISA vs. CITY OF NEW YORK                                      Page 7 of 8
Motion No.  002

7 of 8

any official directive. DOC's firearm policy was adhered to, as Carrillo completed annual Glock 19 requalification from 2012 through 2016 with no mishaps. There is simply no evidence that DOC had notice—actual or constructive—of any propensity for Carrillo to misuse a firearm. As courts have repeatedly held, the unforeseeable, off-duty misadventures of a law enforcement officer—absent any evidence that the employer directed or benefited from those actions—cannot be imputed to the municipality (*Shante D. v City of New York*, 190 AD2d 356 [1st Dept 1993]; *aff'd*, 83 NY2d 948 [1994]).

Having made a prima facie showing and with no genuine issues of material fact in dispute, the City is entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED that the City of New York and New York City Department of Correction's motion for summary judgment pursuant to CPLR § 3212 is GRANTED, and all claims against them are DISMISSED with prejudice; and it is further

ORDERED that all claims and cross-claims against defendant Correction Officer Mario Carrillo are severed and the balance of the action shall continue against defendant Correction Officer Mario Carrillo; and it is further

ORDERED that the Clerk of the Court shall enter judgment in favor of defendant the City of New York and New York City Department of Correction dismissing the claims and cross-claims made against them in this action, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

ORDERED that since the City of New York and New York City Department of Correction are no longer a parties to this action, this matter is respectfully referred to the inventory of a general IAS part.

This constitutes the decision and order of the court.

20250603222381HKINGOD51D7086BC234D65977026E41AAC1C70

**6/3/2025**
**DATE**

**HASA A. KINGO, J.S.C.**

| | | | | | |
|---|---|---|---|---|---|
| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | X | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**450803/2018  MOJICA, LISA vs. CITY OF NEW YORK**
**Motion No.  002**

**Page 8 of 8**

8 of 8

[* 8]