## Gavilanes v 919 Ground Lease LLC

2025 NY Slip Op 31093(U)

April 3, 2025

Supreme Court, New York County

Docket Number: Index No. 153246/2022

Judge: Leticia M. Ramirez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY**

PRESENT:  **HON. LETICIA M. RAMIREZ**

*Justice*

-------------------------------------------------------------------------------X

LUIS GAVILANES,

Plaintiff,

- v -

919 GROUND LEASE LLC and STRUCTURE TONE, LLC,

Defendants.

-------------------------------------------------------------------------------X

919 GROUND LEASE LLC and STRUCTURE TONE, LLC,

Third-Party Plaintiffs,

-against-

SPRING SCAFFOLDING, LLC,

Third-Party Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| PART | 29 |
| INDEX NO. | 153246/2022 |
| MOTION DATE | 02/06/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595693/2022

The following e-filed documents, listed by NYSCEF document number (Motion 001) 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 76, 77, 78, 79, 80

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Plaintiff moves pursuant to *CPLR § 3212* for an Order granting him partial summary judgment on his *Labor Law §240(1)* claim against defendants, 919 Ground Lease LLC and Structure Tone, LLC (hereinafter, "919" and "Structure"), as to the issue of liability only. In turn, 919 and Structure cross-move pursuant to *CPLR § 3212* for an Order granting them summary judgment and dismissing plaintiff's complaint.

This Labor Law action stems from an April 1, 2022, accident which occurred at 919 3rd Avenue, New York, NY when plaintiff, during the course of his employment as a construction worker, was allegedly caused to fall approximately seven feet to the ground. 919 was the owner of the premises and Structure was the general contractor hired to perform the lobby renovation project at the premises. At the time of the accident, plaintiff was an employee of Third-Party Defendant Spring Scaffold, LLC ("Spring"), a subcontractor hired by Structure to construct a wood panel enclosure of the premises for the renovation project. This enclosure was the work plaintiff was performing at the time of his accident.

To recover for his injuries, plaintiff commenced this action against 919 and Structure on April 11, 2022, asserting multiple labor law claims. On November 3, 2022, the third-party action against Spring was discontinued via a Notice of Voluntary Discontinuance (*See* NYSCEF Doc. #16). After plaintiff filed his Note of Issue and Certificate of Readiness on December 8, 2023, he moved for summary judgment on his *Labor Law §240(1)* claim on the issue of liability only. In turn, 919 and

Structure cross-moved for summary judgment on February 9, 2024, in opposition to plaintiff's motion and to dismiss his complaint.

### A. Timeliness of Defendants' Cross-Motion

Plaintiff contends that defendant's cross-motion is untimely and must be disregarded. In the alternative, plaintiff argues that defendants' motion should only be considered to the extent that it seeks similar relief. Defendants' cross-motion does not address plaintiff's argument of timeliness.

Pursuant to *Brill v. City of New York,* 2 NY3d 648, 814 N.E.2d 431, 781 N.Y.S.2d 261 (2004), the movant on an untimely motion for summary judgment must demonstrate "good cause for the delay in making the motion." However, when a cross-movant seeks "nearly identical" relief, the court may consider the untimely cross-motion for summary judgment, even in the absence of good cause (*See Filannino v. Triborough Bridge and Tunnel Authority*, 34 AD3d 280, 824 N.Y.S.2d 244 [1st Dept 2006]).

Here, this matter's Preliminary Conference Order established a 60-day deadline for the filing of dispositive motions. The Note of Issue was filed on December 8, 2023, and thus defendants' cross-motion was due on February 6, 2024. Because defendants did not file their cross-motion until February 9th, their motion is untimely. However, in light of *Filannino*, *supra*, this Court will consider defendants' cross-motion to the extent that it seeks "nearly identical" relief as plaintiff's motion (i.e., summary judgment on plaintiff's *Labor Law § 240(1) claim*).

### STANDARD

To prevail on a motion for summary judgment, the moving party must establish its cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in its favor (*Winegard v. New York Univ. Med. Ctf.,* 64 N.Y.2d 861 [1985]; *Zuckerman v. City of New York*, 49 N.Y.2d 557 [1980]). Absent such prima facie showing, the motion must be denied, regardless of the sufficiency of the opposing papers (*Alvarez v. Prospect Hospital*, 68 N.Y.2d 320, 324 [1984]). However, "[o]nce the movant makes the required showing, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact that precludes summary judgment and requires a trial" (*Dallas-Stephenson v. Waisman,* 39 A.D.3d 303, 306 [1st Dept. 2007], citing *Alvarez,* 68 N.Y2d. at 324).

"On a motion for summary judgment, the court's function is issue finding, not issue determination, and any questions of credibility are best resolved by the trier of fact" (*Martin v. Citibank*, *N.A.,* 64 A.D.3d 477, 478 [1st Dept. 2009]; *see also Sheehan v. Gong,* 2 A.D.3d 166, 168 [1st Dept. 2003]. And "all of the evidence must be viewed in the light most favorable to the opponent of the motion" (*People v. Grasso*, 50 A.D.3d 535, 544 [1st Dept. 2008]).

### B. Plaintiff's Motion for Summary Judgment

In order to prevail in a Labor Law Section 240 case, a plaintiff must prove that (1) he is a member of the class of workers that the statute was designed to protect, (2) the statute was violated, and (3) the breach of duty was a proximate cause of plaintiff's injuries (*See, Koenig v. Patrick*

*Construction Co.,* 298 N.Y. 313 [1948]; *Crawford v. Leimzider,* 100 A.D.2d 568, 473 N.Y.S2d 498 [2nd Dept. 1984]).

### i. Plaintiff was a Construction Worker

Here, there is no dispute that plaintiff was a Spring construction worker who worked at the subject premises at the time of his accident. A review of plaintiff's deposition sufficiently establishes that he was hired by Spring on or about March 2022 (*See,* Plaintiff's Deposition, NYSCEF Doc #30 at pages 14:10-21 and 15:12-14) and was part of a group of construction workers who were assigned to set up an outside structure at the subject premises (*Id.* 26:3-27:3).

Plaintiff testified that he had been working on this project for a few days prior to his accident (*Id.* 30:2-7) and that, on the date of his accident, he arrived at the premises at 7am and was instructed by his foreman, Armando, to unload wood panels from the company truck (*Id.* 47:18-48:9). He performed this work until it was time to break for lunch at 1pm (*Id.* 49:6-8). After lunch, he assisted co-workers in installing wood panels to the structure (*Id.* 49:19-23). They worked in pairs to place, screw, and adjust the panels (*Id.* 50:6-20). The panels were approximately 3x4 feet and green in color (*Id.* 52:9-18) and, generally, he would screw the panels in while Armando held them in place, but they would alternate tasks (*Id.* 53:4-19). To perform this work, he required a 7-foot-high mobile scaffolding belonging to Spring (*Id.* 32:3-25) and described the scaffold as one being able to adjust to about twice its height (*Id.* 33:18-21). It had one platform to work on from which two people could work and wheels that would be locked into place when the scaffold would be moved into the desired position (*Id.* 35:3-17). Other than the scaffold, Spring did not provide plaintiff with any safety trainings or tools; rather, plaintiff testified that he brought all his tools, including harness, hammer, pouches, screwdriver, hard hat, and ratchets (*Id.* 18:22-19:25).

Plaintiff described his accident as follows: at approximately 4pm, while he was installing a wood panel (*Id.* 52:22-53:3), Armando told him to cross over to the other side of the structure to screw in the panel, after which plaintiff proceeded to get down from the mobile scaffold to get some screws before climbing up the inside of the structure to the horizontal pipe where his foot slipped, and he fell (*Id.* 61:14-25). During his deposition, plaintiff identified two pictures depicting the accident scene (*Id.* 72:22-79:16). In the first picture, he identified the enclosure he was working on, the green panels he was installing, the mobile scaffold he worked on, the scaffold's position at the time of his accident, and Armando's position on the mobile scaffold prior to his accident (*Id.* 72:22-74:23). In the second picture, which depicted the inside of the structure, plaintiff identified the pipe from which he fell (*Id.* 74:24-79:16).

On October 27, 2023, James McMullin's deposition was held. Mr. McMullin was the project superintendent for Structure in-charge of overseeing the lobby renovation project (*See,* James McMullin's Deposition, NYSCEF Doc. #32, 11:25-12:3; 12:7-10; 21:9-15). He testified that the project began in March 2021 and entailed "changing the façade, new ceilings, new floors, [and] exposing the front of the building" (*Id.* 20:2-10). Mr. McMullin's responsibilities included "trade coordination and site management" (*Id.*12:11-15) and his day-to-day activities were "mak[ing] sure trades do what they're supposed to do" (*Id.* 12:16-20). He testified that he would be on-site daily, and his typical working hours were from 7am to 4pm or 5pm (*Id.* 32:13-21).

**153246/2022   GAVILANES, LUIS vs. 919 GROUND LEASE LLC ET AL**
**Motion No.  001**

**Page 3 of 7**

Regarding the date of plaintiff's accident, Mr. McMullin stated that Spring was the only contractor on-site and it had about 5 or 6 employees working on the shed (*Id*. 40:17-23). He did not observe plaintiff's accident but learned of it via a call he received around 4:30pm from his project manager (*Id*. 51:23-54:3). Mr. McMullin was not at the jobsite at the time of the call but returned to it approximately 10 minutes after the call (*Id*. 54:15-24). Upon arriving at the jobsite, he observed the location of the accident (*Id*. 54:25-55:7), noticed that an ambulance was already on-site (*Id*. 56:13-22), and that plaintiff was already on the ambulance's stretcher (*Id*. 56:23-57:2).

Given the foregoing, plaintiff has sufficiently established that at the time of his accident he was a construction worker who fell under the purview of the Labor Laws.

### ii.     Violation of Labor Law Section 240(1) and Proximate Cause

Section 240(1) of the Labor Law states:

All contractors and owners and their agents … in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure, shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices, which shall be so constructed, placed and operated as to give proper protection to a person so employed.

The Labor Law was enacted to protect workers by placing ultimate responsibility for safety practices on owners and contractors rather than on workers themselves (*See, Panek v. Albany County,* 99 N.Y.2d 452, 457 [2003]; *Martinez v. NYC,* 93 N.Y.2d 322 [1999]). The statute is construed liberally in favor of construction workers (*Rocovich v. Con. Ed.,* 78 N.Y.2d 509 [1991]), because such workers "are scarcely in a position to protect themselves from accidents" (*Koenig v. Patrick Constr. Co.,* 298 N.Y. 313, 319 [1948]; *Quigley v. Thatcher,* 207 NY 66, 68 [1912]). Violation of the statute results in absolute liability for injuries proximately caused as a consequence thereof (*Zimmer v. Chemung County Performing Arts*, *Inc.* 65 N.Y.2d 513 [1985]). The duty imposed by the statute is nondelegable, and when violation of same causes injury to a member of the class for whose benefit the statute was enacted, the owner, general contractor and their agents are liable (*Haimes v. N.Y. Telephone Co.,* 46 N.Y.2d 132 [1978]). This remains true even where the owner exercises no supervision, control or direction of the work (*Id.*).

Plaintiff contends that defendants failed to provide him with a scaffold with guardrails/safety railings or an anchorage point to hook a safety harness/line in violation of *Labor Law § 240(1)* and that the absence of such devices proximately caused his accident. Plaintiff also argues that he is entitled to partial summary judgment on the issue of liability because defendants failed to provide him with proper fall protection in violation of *Labor Law § 240(1)* and that this violation proximately caused his fall, resulting in his sustained injuries.

Here, the Court finds that the defendants violated *Labor Law § 240(1)* when they failed to provide plaintiff with the adequate safety device to perform his work. Plaintiff testified that he needed the mobile scaffold to install every wood panel on the date of the accident and that none of the wood panels could be installed from the ground floor (*See* Plaintiff's Deposition, NYSCEF Doc #30, page 56:8-19). He also testified that he used the mobile scaffold every day, including the date of his

accident, and that, up to the point of his accident, his work required him to go up and come down from the scaffold (*Id*. 46:13-47:5). On the other hand, Mr. McMullin admitted that, even though it was Structure's responsibility to inspect the work being done on-site to ensure it complied with safety procedures (*See* NYSCEF Doc #32, page 48:16-21), Structure did not provide any of the Spring workers with any safety equipment for the jobsite, including harnesses, lifelines (*Id*. 50:7-16) and that it did not inspect the scaffolding that was on-site (*Id*. 50:17-20; 51:17-22).

Therefore, it is evident that, at the moment plaintiff's foreman directed plaintiff to cross over to the other side of the structure and stand on the horizontal pipes to screw the panel they were working on, plaintiff should have been provided with a mobile scaffold to stand on to complete his work (as he had been using up to that point). Alternatively, plaintiff should have been provided with a similar device "so constructed, placed and operated as to give him proper protection" against the risk of falling from the area where he was directed to perform his work. Mr. McMullin's testimony that Structure did not provide Spring workers with any safety equipment constitutes a breach of its *nondelegable* duty under *Labor Law § 240(1)*. Therefore, because defendants failed to provide plaintiff the proper means with which he could safely complete his work or a safety device to guard him from falling, plaintiff has established his *prima facie* entitlement to summary judgment as a matter of law on his *Labor Law § 240(1)* claim.

## C. Defendants' Cross-Motion and Recalcitrant Employee Defense

Defendants' cross-motion opposes plaintiff's request for summary judgment and seeks to dismiss the complaint in its entirety. As stated above, defendants' cross-motion is untimely, and thus will only be considered to the extent it opposes plaintiff's request for summary judgment. It will also be reviewed to determine whether summary judgment should be granted in favor of the defendants on the *Labor Law § 240(1)* claim.

It is well-settled that "[a] defendant has no liability under Labor Law § 240 (1) when plaintiff: (1) 'had adequate safety devices available,' (2) 'knew both that' the safety devices 'were available and that [they were] expected to use them,' (3) 'chose for no good reason not to do so,' and (4) would not have been injured had they 'not made that choice' (*Biaca-Neto v. Boston Rd. II House. Dev. Fund Corp*, 34 N.Y.3d 1166, 144 N.E.3d 363, 121 N.Y.S.3d 753 [2020] *citing Cahill v. Triborough Bridge & Tunnel Auth.*, 4 N.Y.3d 35, 40, 823 N.E.2d 439, 790 N.Y.S.2d 74 [2004])

Here, defendants argue that plaintiff was the sole proximate cause of his injuries when he failed to use the same mobile scaffolding he had been using moments before his accident and decided instead to climb the inside structure from where he slipped and fell (*See* Affirmation in Support of Cross-Motion, NYSCEF Doc #42, page 11, para. 41). Defendants' argument ignores, however, that Armando, plaintiff's foreman, directed plaintiff to cross over to the other side of the structure to screw the wood panel they were working on (*See* NYSCEF Doc #30, 64:24-65:8). They also disregard that Armando had previously directed plaintiff to climb the inside of the structure to "screw some small bases that needed to be placed with the panel" on a prior date (*Id*. 65:14-66:9), that plaintiff had been working for Spring for only a month prior to his accident (*Id*. 15:12-14; 17:10-12) and that his total experience working with scaffolds up to the time of his accident only consisted of approximately two weeks working under Armando (*Id*. 17:19-22). This demonstrates that plaintiff was an inexperienced scaffold worker whose minimal experience was limited to what he had acquired over the two weeks working with Armando and that, up to the time of his accident, it included the expectation that, at

Armando's direction, he would have to climb the inside of the structure to perform his work without the mobile scaffold. Therefore, defendants cannot show that plaintiff knew he was expected to always use the mobile scaffold, nor that plaintiff chose not to use the mobile scaffold for "no good reason" because the evidence shows that he was directed by Armando to cross over and climb the inside of the structure.

Furthermore, plaintiff testified there was only one mobile scaffold available at the jobsite (*Id.* 64:3-5), and no evidence has been presented to show that another scaffold or another device was readily available to plaintiff and that plaintiff knew of such other device. To argue that plaintiff could have used the same mobile scaffold that Armando needed to hold the wood panel from the exterior while plaintiff screwed it on from the interior is untenable. The evidence shows that either Armando could use the scaffold on the exterior or that plaintiff could have used it from the interior. When asked whether the scaffold could have been repositioned so that Armando could hold the panel in place from the exterior while plaintiff screwed it from the interior, plaintiff testified that he couldn't say and that he just followed Armando's orders (*Id.* 67:24-68:5). Therefore, when plaintiff was directed to climb the inside of the structure to screw the panel from the interior, he should have been provided with his own mobile scaffold or a similar device for him to complete his work and provide him proper protection against falling.

Next, defendants argue that an A-frame ladder was readily available on-site and that plaintiff knew that the ladder was available because Armando had told him about it, and thus the normal and logical response for plaintiff should have been to get it and use it to complete his work. In support of this argument, defendants have submitted two affidavits by Armando (*See* NYSCEF Doc #57 and 58). A review of these affidavits shows that one of them was allegedly written on the date of plaintiff's accident (on April 1, 2022) and the other was allegedly drafted on February 9, 2024. The Court now turns to plaintiff's allegation that the affidavits are inadmissible because they are unaccompanied by a translator's affidavit setting forth the translator's qualifications.

*CPLR § 2101(b)* states, in relevant part, that "[w]here an affidavit or exhibit annexed to a paper served or filed is in a foreign language, it shall be accompanied by an English translation and an affidavit by the translator stating his qualifications and that the translation is accurate." (*See also Eustaquio v. 860 Cortlandt Holdings, Inc.,* 95 A.D.3d 548, 944 N.Y.S.2d 78 [1st Dept. 2012] [statements translated by foreman's daughter from Greek to English were inadmissible, as the statements were not accompanied by an attestation setting forth the daughter's qualifications and the accuracy of the translation]; *Mosquera v. TF Cornerstone Inc.,* 230 A.D.3d 1065, 217 N.Y.S.3d 94 [1st Dept. 2024] [Worker's Compensation questionnaire failed to create a question of fact, as it was not accompanied by a certification from the translator indicating the accuracy of the translation from Spanish]; *Nava-Juarez v. Mosholu Fieldston Realty, LLC,* 167 A.D.3d 511, 91 N.Y.S.3d 373 [1st Dept. 2018] [Defendants failed to show that the translation of information on a C-3 report was provided by a competent, objective interpreter whose translation was accurate]).

Here, Armando's affidavits are not accompanied by an attestation setting forth the translator's qualifications. Therefore, the court will not entertain the statements contained therein.

[* 6]

Lastly, defendants argue that a photograph exchanged by plaintiff as part of his "Exchange of Photographs" dated October 26, 2022, as "copies of photographs depicting the accident location," depict an A-frame ladder behind the mobile scaffold (*See* Affirmation in Support of Cross-Motion, NYSCEF Doc. #42, page 10, para. 38). Here, even assuming, *arguendo*, that an A-frame ladder was present somewhere on the subject premises on the date of plaintiff's accident, under *Biaca-Nieto*, *supra*, the defendants would have to also show (1) that plaintiff both knew that the ladder was available on-site and that plaintiff was expected to use it and (2) that plaintiff chose not to use the ladder for no good reason. As shown above, defendants have failed to make such showing in light of plaintiff's testimony that there were no ladders available on-site and that Spring workers did not use ladders (*See* Plaintiff's Deposition, NYSCEF Doc. #30, 64:6-11) and that Armando had directed plaintiff to climb the inside of the structure on the date of his accident and on a prior occasion (*Id.* 61:14-25; 65:14-66:9). Just showing that a ladder was available somewhere on-site is insufficient (*See Gallagher v. New York Post,* 14 N.Y.3d 83, 923 N.E.2d 1120, 896 N.Y.S.2d 732 [2010] [plaintiff was permitted to recover because there was "no evidence in the record" that he knew "where to find the safety devices" or "that he was expected to use them"]).

In light of the foregoing, the defendants have failed to raise a triable issue of fact to defeat plaintiff's *prima facie* showing. Additionally, defendants have failed to provide sufficient admissible evidence to show that they are entitled to summary judgment on plaintiff's *Labor Law § 240 (1)* claim, and therefore their cross-motion must be denied in its entirety.

Accordingly, it is hereby,

**ORDERED:** Plaintiff's motion pursuant to *CPLR § 3212* for an Order granting summary judgment on the issue of liability on his *Labor Law § 240 (1)* claim is granted; and it is further,

**ORDERED:** Defendants' cross-motion is denied in its entirety.

This constitutes the Decision and Order of this Court.

| **4/3/25** | | **LETICIA M. RAMIREZ, J.S.C.** |
| --- | --- | --- |
| **DATE** | | |

| CHECK ONE: | | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | DENIED | x | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

[* 7]